**L. J. HARRIS, Appellant,**

v.

**GULF REFINING COMPANY and J. J. Bordelon, Appellees.**

**No. 15853.**

United States Court of Appeals
Fifth Circuit.

Jan. 16, 1957.

J. Robertshaw, Greenville, Miss., William E. Robertson, Sarasota, Fla., Robertson & Robertson, Sarasota, Fla., of counsel, for appellant.

Forrest B. Jackson, Jackson, Miss., Charles S. Tindall, Jr., Greenville, Miss., Wynn, Hafter, Lake & Tindall, Greenville, Miss., of counsel, for appellees.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal from a judgment on a directed verdict for defendants at the conclusion of plaintiff's case in a suit to recover damages for the destruction of plaintiff's motor cruiser in an explosion and fire allegedly caused by the negligence of one of the defendants or of his servant.

The following facts appear from plaintiff's evidence. In April 1952 plaintiff embarked on an extensive trip in his motor cruiser through the coastal waters and rivers of the United States. After having traveled some 5000 miles and having found no fault with the vessel, he arrived on August 21, 1952, in Greenville, Mississippi, and moored at the Yacht Club barge. He ordered gasoline from the defendant Bordelon, distributor for the defendant Gulf Refining Company, and a tank truck was driven over to the Club by one of Bordelon's employees. A long hose with a nozzle was extended to the boat and defendant's driver started to fill the starboard tank. Plaintiff noticed a steady drip from the nozzle and thereupon inserted a wide mouthed funnel into the filler cap to catch the drip. He instructed the driver to place the nozzle into the funnel, told him of a warning whistle that would indicate when the tank was about full,

and then went to the other side of the boat. When he returned a short time later gasoline was swirling in the funnel and overflowing from it to various parts of the boat; the driver said that he was unable to shut off the flow, so plaintiff reached in and pulled up a lever on the nozzle which closed it. The driver then told him that he had had trouble on other occasions in shutting off the nozzle because the spring in it was too weak against the force of the pump in the truck. While the port tank was being filled without incident under plaintiff's supervision and the truck driven off, plaintiff, his wife, and his niece started cleaning up all visible traces of the gasoline and turned on the fans to blow out any fumes. The driver was not requested to help, nor, apparently, was Bordelon notified of the mishap by the plaintiff. After leaving the boat for about 45 minutes plaintiff and his family returned, carefully checked again for evidences of gasoline, cast off the barge, and drifted free of any oil in the water. The engines were then started and the boat moved under power about 200 feet and then exploded.

At the trial plaintiff was qualified and testified as an expert on the operation, maintenance, and safety practices of motor boats.

Plaintiff's theory of the accident is that defendant Bordelon's driver either negligently disregarded the warning whistle or more likely was unable to shut off the flow when the tank was filled because of a defect in the nozzle mechanism. The use of the funnel is asserted to have made no difference except to cause the spillage to occur at a higher level and thus some gasoline flowed over the coaming into the cockpit of the boat. The moving of the boat so soon after the mishap was a safety precaution because of the gasoline that surrounded the boat in the water. The explosion resulted from the ignition of vapors of some hidden gasoline by a spark from the exhaust.

Defendants claim that the spillage was caused by the inability of the funnel to take the full inflow of gasoline against the upsurge of air from the tank. Also it is argued, against plaintiff's contention, that the boat would have been in no danger if it had been kept moored to the same spot, and the explosion thus resulted from the premature attempt to move it by the use of its engines following a careless cleanup of the gasoline.

■ At the conclusion of plaintiff's evidence defendants moved for a directed verdict on several grounds. The court, in an oral opinion, stated that he would direct a verdict against plaintiff on the ground that since he was an admitted expert on boating practices, fully aware of the dangers of the situation, he assumed the risk of the consequences of any damage resulting from the spilled gasoline by deciding to put his boat into operating condition himself, rather than requiring Bordelon to do so.

In support of the court's decision the defendants argue that plaintiff assumed all risks of the consequences by: (1) assuming control over Bordelon's driver and directing the insertion of the funnel whose use resulted in the spillage; (2) assuming sole responsibility for the cleanup which was evidently performed inadequately; (3) starting the engines prematurely and with full knowledge of the possible presence of more spilled gasoline.

Plaintiff in effect contends that the first point is irrelevant since the spillage occurred because of a defect of the nozzle, known to defendant's employee, which made him unable to shut off the flow; the use of the funnel at most changed the place of the spillage.

Defendants urge that Mississippi has a rather broadly inclusive assumption of the risk rule. However, the cases cited for this general proposition, in which it has been held that plaintiff has assumed the risk as a matter of law, all involve instances in which such a conclusion is far more obvious. In McDonald v. Wilmut Gas & Oil Co., 180 Miss. 350, 176 So. 395, plaintiff left his ox in a field with a plainly visible open ditch into which the animal fell and was drowned; in Saxton

v. Rose, 201 Miss. 814, 29 So.2d 646, plaintiff passenger voluntarily rode in a car with an obviously drunk driver—in that case the Supreme Court of Mississippi defined the difference between contributory negligence and assumption of the risk as the distinction between "carelessness" and "venturousness"; in Runnels v. Dixie Drive-it-Yourself System Jackson Co., 220 Miss. 678, 71 So.2d 453, 46 A.L.R.2d 397, plaintiff rented a car and drove it at high speeds even though he detected a strong shimmy.

The most nearly similar Mississippi case is Standard Oil Co. of Kentucky v. Evans, 154 Miss. 475, 122 So. 735, in which a filling station attendant through inattention permitted gasoline to overflow the tank and spill over plaintiff's car; he refused to clean the car when requested to do so, and the car soon caught fire after it had been driven off uncleaned by the plaintiff. The Supreme Court of Mississippi held that the trial court had been correct in not directing a verdict for the defendant, since the spilling of the gasoline was the proximate cause of the fire and plaintiff had not assumed the risks by driving away his car in that condition—at most he was contributorily negligent. The trial court distinguished this case on the dual ground that here plaintiff was an expert on boat operation and safety and was thus in the best position to evaluate the hazard created by the spillage, and that by not even requesting that defendant clean his boat he assumed the risk of the consequences of an inadequate cleanup; defendants urge the additional ground that here plaintiff had assumed control over the entire filling operation.

In Mississippi all questions of negligence are for the jury,[1] and this Court has recently recognized that by Mississippi law all factual matters in a negligence suit, including the application of the appropriate standards of care, are for the jury. Irvin v. Bedford, 5 Cir.,

224 F.2d 452, 454–55. Here the jury could have found that the original spillage was due to a defect of the nozzle; that plaintiff had good reason to believe that his experienced cleaning would be more efficient than any that defendant's driver might attempt, or that the urgency was such that it would have been unwise to wait and get in touch with Bordelon himself; and that it was a reasonable precaution to move the boat, by means of its engines, away from the gasoline in the water. In the Evans case the Mississippi court held that it was not an assumption of the risk for plaintiff to drive away his car without attempting any cleaning at all, and so it would seem that plaintiff here should be in no worse position after having attempted a thorough cleanup which, though evidently insufficient, the jury might well find not to have been even negligent. Thus the jury here could have found that plaintiff's conduct was merely contributorily negligent, or perhaps not even negligent at all. Finally we do not see why plaintiff's expert knowledge of boats should put him in any worse position than that of plaintiff driver in the Evans case. As the court there pointed out, gasoline is a notoriously dangerous substance and consequently defendant there was charged with the knowledge that a spillage might be dangerous, but the same notoriety— which characterization after all means nothing more than that even one not an expert is expected to know the fact— did not preclude the plaintiff from recovering even though he too must have been charged with the knowledge that driving his car in that condition was dangerous, and nothing in the Evans opinion suggests that if plaintiff had been an expert with perhaps a more vivid sense of the danger of the situation he would have been deprived of his right to recover for defendant's negligence.

Defendants now urge that the trial court's action might also be sustained on

other grounds which actually were urged on it but which it did not feel it necessary to consider, and that if such grounds would justify the judgment this Court should sustain it. Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224; Wise v. United States, 5 Cir., 63 F.2d 307; Commercial Nat. Bank in Shreveport v. Parsons, 5 Cir., 144 F.2d 231. We will therefore consider these additional grounds.

[2] Defendants argue that their negligence, if any, was not the proximate cause of the 'explosion, but that it was at most a prior, remote cause of the accident. Again they rehearse the plaintiff's interference by introducing the funnel, his assumption of the cleanup, and the starting of the engines. Reference to the Evans case will show the futility of this argument. The court there specifically held that the proximate cause of the fire was the spillage of the gasoline and not the driving away of the uncleaned car. Here plaintiff would seem to be in a somewhat stronger position for his evidence shows that a thorough attempt to clean the boat had been made. The role of the funnel again is for the jury for under plaintiff's evidence and theory the defective nozzle would have caused some spillage in any case.

Defendants contend that no evidence was introduced to show that they actually knew of the defect in the nozzle, or that the defect had continued long enough that they might be charged with knowledge. But plaintiff's evidence shows that Bordelon's servant, the driver of the truck, admitted that he had had difficulties with the nozzle on other occasions, and since he undoubtedly was the agent of one of the defendants the knowledge he acquired within the scope of his employment is chargeable to his master. Restatement, Agency, § 272; 2 Am.Jur., Agency, § 368. The fact that plaintiff may have directed some of his actions makes no difference for the driver did not thereby cease to be Bordelon's employee, and, moreover, the relevant knowledge about the defect of the nozzle had been acquired earlier.

Finally defendant Gulf Refining Company urges, as a separate defense, that Bordelon was merely an independent contractor whose negligence is not imputable to Gulf. This point was expressly passed over by the trial court in its oral opinion. The contracts under which Bordelon acted as local distributing agent for Gulf are set forth in the record, and plaintiff asserts that their terms are substantially identical with those of an earlier contract between the Gulf Refining Company and another distributor which the Supreme Court of Mississippi in a tort suit had held did not have the effect of constituting the distributor an independent contractor, for:

> "By the terms of the contract it appears that appellant [Gulf Refining Company] tried to make Wilkins [the distributor] an independent contractor and at the same time retain complete control of the business. This cannot be done under the law."

Gulf Refining Co. v. Nations, 167 Miss. 315, 330, 145 So. 327, 333. That case relied on Kisner v. Jackson, 159 Miss. 424, 132 So. 90, whose statement of the criteria for establishing the relationship of independent contractor was recently reaffirmed in Laurel Daily Leader v. James, Miss., 80 So.2d 770.

In view of the fact that the lower court has not considered and passed on this somewhat complex issue and in view of the fact that for the reasons stated above this case will have to be remanded for a new trial, we do not feel that we should resolve this aspect of the dispute at the present time. It would also be inappropriate for us to make a decision on this point based only on plaintiff's evidence when relevant matter may be presented during the defendants' case, for it is entirely possible that the defendant Bordelon may find it to his advantage to introduce evidence of an agency relationship with his codefendant.

The judgment appealed from must be reversed and the case is remanded for a new trial.

CAMERON, Circuit Judge, dissents.