Mrs. Martha Mae **LESLIE**, Appellant,

v.

**CITIES SERVICE REFINING CORPO RATION**, Appellee.

No. 16963.

United States Court of Appeals
Fifth Circuit.

March 4, 1958.

H. Alva Brumfield, Baton Rouge, La., for appellant.

G. Allen Kimball; Thos. F. Porter; Jones, Kimball, Harper, Tete & Wetherill; and Porter & Stewart, Lake Charles, La., for appellee.

Before HUTCHESON, Chief Judge, and JONES and BROWN, Circuit Judges.

PER CURIAM.

Leslie, an employee of Born Construction Company, an independent contractor, was killed when the 90-foot stack being raised for Cities Service Oil Corporation fell with a violent crash to the ground. The stack was being installed on a heater or furnace designed to be, and actually used as, a pre-heater and part of a catalytic cracking unit in the large refinery of Cities Service near Lake Charles,. Louisiana.

The threshold question was, of course, the frequent one under Section 6 of the Louisiana Compensation Act[1] of whether the work of constructing a furnace, installing and raising the stack was a part of the "trade, business, or occupation" of Cities Service. If it was, the sole remedy against the employer (contractor) or Cities Service was under the Louisiana Compensation Act. The District Court, in an unpublished opinion, on motion for summary judgment, "reached the conclusion that the trade, business and/or occupation of Cities Service Refining Corporation is the refining of crude oil and the making of by-products from crude oil, and under Louisiana law the installing of a heavy smokestack on a furnace at said Cities Service refinery is legally a part of Cities Service's trade, business and/or occupation. If a jury were to hold otherwise, I would, under the law as construed by

[1]. Section 6 of Act 20 of 1914 as amended, LSA–R.S. 23:1061 to 23:1063.

the Courts, feel it my duty to set the verdict aside. * * *."

This result would, the Court stated, "be required by the reasoning in the cases above cited [2] * * *." These conclusions were, the Court held, fortified by the recent Louisiana decisions [3] Speed v. Page, 222 La. 529, 62 So.2d 824 and Wynn v. Fidelity & Casualty Co. of New York, La.App., 85 So.2d 315, each of which were discussed at length and from which extensive quotations were made.

From the District Court's statement about its function and citation of our decision in Tucker v. Texas Company, 5 Cir., 203 F.2d 918, it is apparent that the Court fully understood that summary judgment could be granted only if there were no genuine issues of fact on this score. Though this was not discussed in detail, the record is abundant and uncontradicted that Cities Service, in the extensive operations incident to the construction, maintenance and operation of its large modern refinery at Lake Charles had itself performed similar rigging and construction work on stacks or similar equipment at a cost in the neighborhood of five million dollars without the intervention of independent contractors.[4]

2. The Judge reflected his acute familiarity with this field and the controlling principles announced by the Louisiana Courts and this Court:

"Both parties agree that the interpretation of the Statute and the determination of coverage are entirely questions of Louisiana law. The United States Court of Appeals for the Fifth Circuit has, on three recent occasions, interpreted the phrase 'work, which is a part of [the principal's] trade, business or occupation' which defines the type of activity so intimately connected with a person's business that even if assigned to be done by an independent contractor the person remains liable under the Compensation Act to the workman who actually performed the work, Isthmian S.S. Co. of Delaware v. Olivieri, 5 Cir., 202 F.2d 492, 494; Fontenot v. Stanolind Oil & Gas Co., D.C.W.D.La., 144 F.Supp. 818, 824, affirmed 5 Cir., 243 F.2d 574; Hall v. Continental Drilling Company and The California Company, 5 Cir., 245 F.2d 717. The Louisiana courts have also recently held that even the repairs of a building housing a hazardous business is a part of the trade, business or occupation of the employer. Speed v. Page, 222 La. 529, 62 So.2d 824; Wynn v. Fidelity & Casualty Co. of New York, La.App., 85 So.2d 315, decided March 15, 1956." At a later point he also cited Tucker v. Texas Co., 5 Cir., 203 F.2d 918; Thibodaux v. Sun Oil Co., 218 La. 453, 49 So.2d 852.

3. The Court concluded from Speed: "The Louisiana Supreme Court, in no uncertain terms, has held that where the owner of an admittedly hazardous business, in the conduct of that business undertakes repair, whether it be of the building housing same or the equipment therein, either through its employees or through a subcontractor, its employees and those of the subcontractor are under the protection of the employer's liability laws of the State of Louisiana. * * *" So that "* * * it is obvious plaintiff's remedy is under the Louisiana Workmen's Compensation Act."

The District Court was aware, as was the Louisiana Court of Appeals in Wynn v. Fidelity & Casualty Co. of New York, supra, that in Speed the injured man was a direct employee of the theater owner whose building was being partially demolished and reconstructed after fire damage. In the portion quoted from the Wynn opinion, the Louisiana Court of Appeals [85 So.2d 318] pointed out that Section 6, note 1, supra, "erases the distinction sought to be drawn in favor of defendant's insured, and Wynn must be considered entitled to be paid workmen's compensation the same as if he had been employed directly by the insured."

4. Cities Service, with only one exception, performed the following work at its refining plant under the direction of its own supervisory employees using materials and supplies procured by it by direct purchase and its own or leased equipment: (a) Installed stacks weighing six tons each on towers at the Acid Plant; (b) Erected a twenty-eight ton tower 100 feet tall on the treating plant; (c) Changed four steam drums weighing eighteen tons each on the Low pressure Boilers; (d) Lowered and raised a 115-foot tall Isomerization stack weighing ten tons; (e) Erected a 110-foot tall stack on the Thermal unit; (f) Changed six stacks reaching 225 feet in height on the Catalytic Crackers; (g) Lowered two twenty-ton drums on the Alkylation Units.

What it had in fact so extensively done was, of course, incidental and related to the "trade, business, or occupation" of one carrying on the operations of an oil refinery.

Affirmed.