Richard Henry HUGHES et al.,
Appellants,

v.

Edward DECKARD, d/b/a Deckard Drilling Company, et al., Appellees.

No. 17635.

United States Court of Appeals
Fifth Circuit.

June 16, 1959.

W. D. Cotton, Rayville, La., for Great American Indemnity Co.

William B. Ragland, Jr., Lake Providence, La., for intervenor.

Richard H. Switzer, Wellborn Jack, Shreveport, La., Lunn, Irion, Switzer, Trichel & Johnson, Shreveport, La., of counsel, for appellees.

Before JONES and BROWN, Circuit Judges, and WRIGHT, District Judge.

JOHN R. BROWN, Circuit Judge.

The problem here is whether the plaintiff Hughes, a regular employee of Planters Butane Heat & Power Co., Inc., became the borrowed servant of the defendant Deckard so that the plaintiff's sole remedy for injuries negligently caused by Deckard's men is under the Louisiana Compensation Act, LSA–R.S. 23.1021 et seq. The District Court, granting Deckard's motion for summary judgment, held that this was so as a matter of law. We disagree.

The affidavits, pro and con, are brief and reveal the following facts. Deckard was drilling an oil well on the west side of the river between the levee and the water. His crew needed butane gas for the drilling operations. Nix, Deckard's superintending tool pusher, on the morning of the accident, went to the place of business of Planters Butane and ordered a tank of butane gas to be delivered at the well site. Because of the current inclement weather, Nix knew, and so informed the Planters Butane, that unless the butane truck with the tank of gas was equipped with chains, it could not drive over the levee from

the west side to the east side as the levee was wet, muddy and slippery. On Planters Butane stating that their truck had no chains, Nix advised that if Planters Butane would send the truck to the west side of the levee, Nix would have one of Deckard's trucks, equipped with chains, hook onto the butane truck and pull it on and over the top of the levee and then to the well site. Planters Butane agreed.

Hughes was in the regular general employ of Planters Butane. Planters Butane alone had the usual right to hire and fire him and paid his regular and substantial salary. His job was to deliver butane to customers. Planters Butane customarily delivered the butane gas sold to its customers as the price charged included transportation and delivery.

Hughes brought the butane truck to the west side of the levee where he was met by a Deckard truck equipped with chains. Hunter, Deckard's driver, "spoke to [Hughes] and advised him that he [Hunter] would hook the [Deckard] truck * * * to the front end of said butane truck to pull or haul it over said levee to the east side thereof and to the well site; that [Hughes] replied to [Hunter] that such procedure was all right and quite satisfactory to him, whereupon [Hunter] proceeded to hook said trucks together and [Hunter] proceeded to pull the same up onto the levee following which an accident occurred. That had not [Hughes] remained in said [butane] truck to steer it, it would have been necessary to place someone therein for said purpose."

It was this last portion just quoted to which Deckard, below and here, attributes decisive significance. This portion, he insists, shows absolutely that exclusive direction and control was committed to Deckard's men, Nix and Hunter, so that Hughes, a general employee of Planters Butane, became a borrowed servant of Deckard as well. The District Court agreed, holding that "from the time the truck he was operating was attached to Deckard's truck for towing,

[Hughes] not only was under the technical control and direction of Deckard's employees, but was under their actual physical control in attempting to move the butane tank mounted upon his trailer from the foot of the levee to the site of the well being drilled by Deckard." But then the Court added the further reason that "since this operation was a necessary and integral part of Deckard's trade, business and occupation—the drilling of oil wells in search of oil and gas— * * * plaintiff was [Deckard's] employee *pro hac vice* * * *." By this added ground the Court, we think, perhaps revealed the inception of its error. For Deckard agrees that this factor, under Section 6 of the Louisiana Compensation Act, LSA–Rev.Stat. 23:1061–1063, the frequent subject of decision in this Court, Dodge v. Anderson, 5 Cir., 1958, 255 F.2d 246; Leslie v. Cities Service Refining Corp., 5 Cir., 1958, 252 F.2d 902; Hall v. Continental Drilling Co., 5 Cir., 1957, 245 F.2d 717; Fontenot v. Stanolind Oil & Gas Co., 5 Cir., 1957, 243 F.2d 574; Isthmian SS Co. of Del. v. Olivieri, 5 Cir., 1953, 202 F.2d 492, is not really in question here. In those cases the Louisiana Compensation Act is the exclusive remedy to an employee of a contractor because the work being done is a part of the trade, business or occupation of the company for whom the work is being performed by the contractor. Here the Compensation Act is claimed to be exclusive because the relation of master and servant temporarily exists between the injured (borrowed) person and the ostensible third party.

■ The test on borrowed servant in Louisiana, as nearly everywhere else, finally comes down to the elusive one of the right of direction, dominion and control. For "In determining whether an employee becomes the servant of another so as to impose liability on such third person for torts committed by the employee, the Louisiana courts have followed the familiar 'control test'. Dixie Machine, Welding & Metal Works v. Boulet Transp. Co., La.App., 38 So.2d 546, 551. See The Borrowed Servant

Problem, 38 Mich.Law Rev. 1222; The American Law Institute's Restatement of Agency, § 227." Johnson v. Royal Indemnity Co., 5 Cir., 1953, 206 F.2d 561, 564.

In applying that standard, one factor is occasionally given some special significance—and this even though conceptually it must be acknowledged that this tends to slide over into the Section 6 problem of usual trade and business which is the subject of the Leslie type cases. But this factor is not the trade and business of the contractee (here Deckard), but rather the usual work and task performed by the general employee (here Hughes) for his regular, general employer (here Planters Butane). Benoit v. Hunt Tool Co., 1951, 219 La. 380, 53 So.2d 137; Miller v. B. Lewis Contractors, Inc., La.App., 1958, 103 So. 2d 592; Dixon v. Herrin Transportation Co., La.App., 1955, 81 So.2d 159; Duke v. Dixie Building Material Co., La.App., 1945, 23 So.2d 822.

As Louisiana follows the general doctrine, and has many times made reference to the classic case of Standard Oil Company v. Anderson, 1909, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480, it is entirely appropriate to state that on this facet Louisiana is in accord with the general notion so well expressed in language characteristic of Judge, later Justice, Cardozo in Charles v. Barrett, 233 N.Y. 127, 135 N.E. 199, 200. "The rule now is that, as long as the employee is furthering the business of his general employer by the service rendered to another, there will be no inference of a new relation unless command has been surrendered, and no inference of its surrender from the mere fact of its division."

Here, if it is not uncontradicted so that it is established as a matter of law, it is at least a question of fact for the jury that Hughes was doing exactly what he normally and regularly did—deliver butane gas by the company's vehicles—and precisely what Planters Butane had agreed with Nix he would do.

So far as direction and control is concerned, the record facts do not compel, indeed do not permit, the conclusive finding as a matter of law that Hunter, rather than Hughes, had the exclusive and final right of command. At the very least conflicting inferences are open. Was Hunter's outline of the proposed plan of operation an inquiry of Hughes for his approval and the assertion by Hunter of a right to control? Or was it a tacit recognition that Hughes would call the signals? Was the fact that it was a dual cooperative operation with each driver necessarily having to do things independently by the exercise of independent judgment an indication that neither was supreme? Nothing in C. W. Greeson Co. v. Harnischfeger Corp., 1957, 231 La. 934, 93 So.2d 221; B & G Crane Service v. Thomas W. Hooley & Sons, 1955, 227 La. 677, 80 So.2d 369; Dixie Machine, Welding & Metal Works, Inc. v. Boulet Transportation Co., La. App., 1949, 38 So.2d 546; Aetna Casualty & Surety Co. v. Manufacturers Casualty Ins. Co., D.C.W.D.La.1956, 140 F.Supp. 579; or Maddox v. Aetna Casualty & Surety Co., 5 Cir., 1958, 259 F.2d 51, also heavily pressed by Deckard, compels a contrary decision in the light of the proper function of summary judgment. F.R.Civ.P. 56, 28 U.S.C.A.

We hold that it has not been established as a matter of law that Deckard was the vicarious master of Hughes. Of course, since Hughes did not move for summary judgment and our decision is merely that there is at least a genuine fact issue on whether Deckard's men had the exclusive right of control, we do not, nor could we, indicate now whether Deckard's status as a third party will be established as a matter of law or will be a like question of fact. The Court in the light of the Louisiana principles of law and the evidence actually developed on the trial will have to determine this on the trial.

The cause must be reversed and remanded for other and further consistent proceedings.

Reversed and remanded.