**Clifford H. ROBBINS, Appellant,**

v.

**MILNER ENTERPRISES, INC., Appellee.**

**No. 18144.**

United States Court of Appeals
Fifth Circuit.

April 18, 1960.

Cary E. Bufkin, Jackson, Miss., Satterfield, Shell, Williams & Buford, Jackson, Miss., for appellant.

Robert C. Cannada, Jackson, Miss., Butler, Snow, O'Mara, Stevens & Cannada, Jackson, Miss., of counsel, for appellee.

Before CAMERON, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

The immediate question is whether summary judgment for defendant in a Mississippi diversity case was properly entered on the theory that the facts showed without a substantial likelihood of contradiction that the plaintiff had assumed the risk of operating an automobile with faulty brakes. F.R.Civ. Proc. 56, 28 U.S.C.A. We think not and reverse.

Robbins, the plaintiff, was a sergeant in the United States Army. He was a skilled driver and, indeed, at the time of his accident, was en route to another Mississippi city where he was to conduct written driver examination tests for members of the Reserve. His claim was a simple one. He was assigned a car

from the motor pool at the Jackson, Mississippi military installation. That vehicle—later involved in the wreck which severely injured him—had been turned over to the defendant garage for adjustment and repair of the brakes and repair of the speedometer. The motor pool dispatcher instructed Sgt. Robbins to pick up the car at the defendant's garage. When Sgt. Robbins came to the garage for the car, the work had not been finished. Within a short time, the repairs were reported to have been completed, and the car was turned over to him. At this place arises the critical element of Sgt. Robbins' theory. In positive factual terms in the discovery deposition, Sgt. Robbins stated that at the time the car was delivered to him, the defendant represented that the brakes had been repaired, and that the car was ready and safe to drive.

Sgt. Robbins then drove the car away on his mission. His itinerary is important, not because of any idea of digression, but in giving meaning to the critical, and perhaps decisive, testimony on what Sgt. Robbins knew on each leg of his indirect journey. His ultimate destination was Indianola, Mississippi, some 103 miles from Jackson. He proceeded, however, by an indirect route to afford transportation to a fellow noncommissioned officer. The first leg was Jackson to Yazoo City, approximately 43 miles. The second leg was Yazoo City to Greenwood, 55 miles further. The third leg was Greenwood to Clarksdale approximately 57 miles. After dropping his passenger there, he began the fourth leg from Clarksdale to Indianola, an expected distance of 57 miles. While on the fourth and last leg, the wreck occurred.

The details of the accident are not too important. Sgt. Robbins was driving the car at a very moderate speed behind a large truck. When the truck pulled off the road, he saw for the first time a slow moving farm tractor in his lane ahead. He put on his brakes to reduce speed. When he did so, the brakes locked, the car jerked violently to the left, the steering wheel was pulled out of his hands, and the car "just went over to the left and turned over and rolled me out."

Neither here nor below did the defendant question the existence of a substantial dispute of fact on (a) the representation that the brakes on the car had been completely repaired, (b) the accident occurred because the brakes were defective, (c) the accident was the proximate result of the misrepresentation and (d) substantial injuries were received. More than that, in view of the Mississippi comparative negligence statute,[1] defendant does not assert that contributory negligence of Sgt. Robbins would bar his recovery. The theory of defense, successfully pressed below, was that Sgt. Robbins, after leaving the garage and while on each of the three legs preceding the accident, knew that the brakes were not in fact working properly. His continued driving with this knowledge of the defect and its hazards was a voluntary assumption of risk. Disagreeing strenuously on how to read them, all seem to meet for momentary agreement that in our Erie search for the Mississippi concept of assumed risk, we are to find it in the three leading cases. Saxton v. Rose, 1947, 201 Miss. 814, 29 So.2d 646; McDonald v. Wilmut Gas & Oil Co., 1937, 180 Miss. 350, 176 So. 395; Runnels v. Dixie Drive-It-Yourself System, 1954, 220 Miss. 678, 71 So. 2d 453, 46 A.L.R.2d 397. Akin to these perhaps is our decision in Harris v. Gulf Refining Co., 5 Cir., 1957, 240 F.2d 249, where, disagreeing with the Mississippi trained judge who tried it and a Circuit Judge dissenting in it, this Court held it to have been a question of fact for the jury.

As we view the case in its limited frame, we do not find it either necessary or desirable that we undertake to determine or expound just what are the minima-maxima reaches of the Mississippi doctrine by which, on one hand, assump-

1. Miss.Code Ann. § 1455 (1942).

tion of risk is established as a matter of law, and, on the other hand, as a matter of law is not present leaving all in between for jury resolution. Ours is the narrower inquiry whether in advance of the traditional trial, the evidence brought forward on motion for summary judgment forecasts that there is no substantial possibility that the evidence actually adduced will permit a jury finding that Sgt. Robbins did not knowingly assume the risk of injury.

■ For our purposes, it is enough to say that the Mississippi doctrine rests on the basis that "one who knows, appreciates, and deliberately exposes himself to a danger 'assumes the risk' thereof." [2] The essence of the defense is knowledge of the defective condition, conscious awareness or appreciation of the dangers inherent in it, and a voluntary decision to risk likely injury.[3] The quality of deliberate exposure to known danger is graphically portrayed in the distinction drawn by the Mississippi courts between contributory negligence and assumed risk. "The distinction has been tersely said to be that assumption of risk is 'venturousness' on the part of the person injured, while contributory negligence is his 'carelessness'." [4]

Approaching in this light, the evidence produced on the motion for summary judgment to establish that there cannot be any genuine controversy on the "true facts," we think that it did not compel a conclusion that Sgt. Robbins knew of the defect which caused the brakes to lock during the occurrence of the accident. Neither did it compel the conclusion that the condition of the brakes which he did know of was necessarily the equivalent of knowledge that such deficiencies would likely result in locking, or that he was consciously taking that risk.

In his pretrial deposition testimony upon which motion for summary judgment was largely based, Sgt. Robbins did use the terms that the brakes were "pulling" or "grabbing." But despite the difficulty in finding suitable words into which to translate the varying shadings which the bare word can connote, we must recognize that there may be vast actual differences, both in degree and kind, in the extent to which brakes may be "grabbing." It may be slight, or it may be severe. It might be gradual or it might be sudden. It might be momentary as brakes are applied. It might be continuous from time of application until release of brake pedal pressure. Yet as to each physical occurrence, it would be technically accurate to use the word and say that the brakes were "grabbing." Not only would the word be permissible as a matter of usage to de-

2. This is from 38 Am.Jur. § 171, Negligence, at 845, quoted with approval by the Mississippi Supreme Court in Saxton v. Rose, supra, 29 So.2d 646, at page 650.

3. See, e. g., expressions such as these from the three key Mississippi cases. Saxton v. Rose, supra, 29 So.2d 646, at pages 647, 648, 649. Plaintiff was "bound to have known that [the driver was] intoxicated. * * * He dared to accept the hazards of the adventure, fully aware of them, and the result of his risk was his untimely death." Plaintiff "knew Eldridge was drunk." Plaintiff "went into this dangerous situation, with his eyes open, knowing the driver was intoxicated, and therefore incompetent to drive safely." A person who "voluntarily and knowingly places himself in such a position, * * * appreciating that injury to himself on account thereof is liable to occur * * *" has "assumed the

risk." Runnels v. Dixie Drive-It-Yourself System, supra, 71 So.2d 453, at page 457. Plaintiff as he drove the car "noticed it was shimmying" and that it was "difficult to keep it in the road." "He knew the danger in operating" a shimmying car. "He knew it was dangerous." McDonald v. Wilmut Gas & Oil Co., supra, 176 So. 395, 396. "Hence, if the [plaintiff] already know of the * * * particular danger of which he complains, he has had all that he is entitled to expect, which is to say, an opportunity for an intelligent choice as to whether the advantage to be gained * * * is sufficient to justify him in incurring the risk incident thereto."

4. This is from 45 C.J. pp. 1043, 1044 (now 65 C.J.S. Negligence § 174) quoted with approval by the Mississippi Supreme Court in Saxton v. Rose, supra, 29 So.2d 646, at page 649.

scribe a physical phenomenon of varying intensity, but the legal consequences would depend, not solely on the word used, but the other circumstances giving it color and quality. Knowledge that a vehicle's brakes are "grabbing" is, of course, knowledge of that fact. But whether it is knowledge that the brakes were seriously defective and would seize or lock when applied in an emergency would depend on the nature and extent of that "grabbing" and the effect such "grabbing" was having on the action of the vehicle. Even more is required besides the bare word "grabbing" to transmute knowledge of that limited action into a conscious voluntary choice of a known danger. What is true of the term "grabbing" is equally so of "pulling."

On the first leg (Jackson to Yazoo City) Sgt. Robbins noticed "the brakes pulling to the right somewhat." But the pulling was "not too bad" and the "pulling to the right * * * was very little." During the second leg (Yazoo City to Greenwood), again the "brakes * * * pulled to the right" but no "greater than * * * before." Sgt. Robbins recounted that it was "very light, according to the speed I was traveling." On this second leg while going around a curve, the car weaved a little. Sgt. Robbins stopped and discovered a rear tire going down and changed the tire. At Greenwood where the tire was repaired, he asked the service station attendant to check the brakes as he "knew there was something wrong with them" but didn't know exactly what although "it appeared to be very minor." No mechanic was available at that station and the brakes were not checked. On the third leg (Greenwood to Clarksdale), the brakes continued to pull, but whether to the right or left, he did not know. In trying to answer this inquiry, he used, for the first time, the expression of the brakes "grabbing." The "left wheel could have grabbed and pulled you to the right or your right wheel could have grabbed and still pull you to the right." He could not determine "which wheel was grabbing, but they were grab-

bing." He acknowledged that "it was obvious" to him "that a wheel was grabbing" but there is no description of how much or how badly. On the final and fourth leg (Clarksdale to Indianola), the brakes "grabbed again" and as they did "pulled to the right," but only, his affidavit elaborated, "slightly." Sometime thereafter the accident occurred. When he saw the farm tractor, "I put my foot on the brakes * * * so I would stop before I hit the tractor." But instead of pulling to the right as the car had done previousy, on this occasion " * * * the wheels locked, pulled the steering out of my hands" and the car "pulled violently to the left" and "turned over and rolled me out of it."

On the Mississippi concept of assumed risk, whether this "pulling" or "grabbing" of the brakes was an absolute bar depended on whether Sgt. Robbins knew, not only that this was occurring, but that it was an obvious danger fraught with the probable risk of brake seizure or locking which would wrest the car completely out of his control. This calls for application of the same rule of prudence to which a defendant is subjected. Would a reasonably prudent person situated as was Sgt. Robbins have known that from brakes which were "pulling" very little or similarly "grabbing" would likely lock? Would such a prudent person have appreciated both the physical phenomenon and the danger of continued operation? This depends primarily on the mechanical-operational severity or intensity of this mechanical action.

From the nature of things, the expressions so far used are not sufficiently definite for us to say that all reasonable minds would have to conclude that Sgt. Robbins knew not only of deficiencies in the brakes but the obvious danger and voluntarily took a chance that serious injury would likely occur. The expressions "grabbing" and "pulling" as thus far used are, for the reasons pointed out, too equivocal. Especially is this so in the context of the record. It shows that the car was taken to the defendant to repair the brakes. Supposedly the

brakes were in fact repaired. More than that, defendant represented that the brakes were in good working order. And this was not done until after the car was first road-tested. Since the brakes began "pulling a little" on the first leg of the voyage shortly after completion of the road test which led defendant to certify the fitness of the brakes, was Sgt. Robbins compelled as a matter of law to then know that the brakes were seriously defective presenting immediate, obvious dangers? Was a prudent man then and there required to conclude that the defendant garage, supposedly an expert in repairs, had performed its work badly or not at all, or that its road test and representations were matters which could not be taken into account by the driver as he made the decision to stop or go on? If such conclusions were not compelled at that time, then was the nature of his knowledge—either of the deficiency or the hazard—changed by succeeding events?

On Sgt. Robbins' words, the inference could be drawn that conditions remained substantially the same. The brakes continued "pulling" but as before they pulled "very little." Nor did any incident of the brakes "grabbing" or "pulling" on subsequent legs compel a finding that things were getting worse with more aggravated or serious manifestations of the trouble. Indeed, the continued operation of the car for the more than 150 miles of the first three legs with brakes which "pulled" or "grabbed" a little, but which had not yet demonstrated any likelihood that this condition would interfere with complete control of the car by Sgt. Robbins at the speeds he was driving, may of itself be a strong factor justifying an inference that a prudent person would have thought the car reasonably safe. And if it would not justify that affirmative inference, would it not at least warrant the negative inference that reasonable minds would not have to conclude absolutely—not that Sgt. Robbins was imprudent in driving on—but was deliberately doing so in the face of knowledge of an obvious hazard likely to result in harm?

This analysis demonstrates, we think, that by the nature of this problem on the evidence so far produced, there were genuine issues of fact. These included controversy as to the extent of the defect, the real nature of the risk or hazard, Sgt. Robbins' realization or appreciation thereof, and the voluntary, deliberate character of his action in taking a chance. Summary judgment was therefore not permissible. See Bros., Inc. v. W. E. Grace Mfg. Co., 5 Cir., 1958, 261 F.2d 428, 432; Inglett & Co. v. Everglades Fertilizer Co., 5 Cir., 1958, 255 F.2d 342, 348; Heyward v. Public Housing Ad'm, 5 Cir., 1956, 238 F.2d 689, 696; Hughes v. Deckard, 5 Cir., 1959, 267 F.2d 697; Bruce Construction Corp. v. United States, 5 Cir., 1957, 242 F.2d 873; Bluff Creek Oil Co. v. Green, 5 Cir., 1958, 257 F.2d 83.

We think that the District Judge as well as the able counsel for the parties approached this matter as though action on summary judgment necessarily could and should forecast the required decision on a motion for instructed verdict made either at the close of the plaintiff's case or after all of the evidence was in on a trial. Ordinarily, summary judgment serves that office. It is a means of determining through this special type of trial that a final traditional trial is not needed. That is, when all is done and over, and the sources of evidence exhausted, there is no controversy in fact as to a particular issue essential to a claim or defense.

There may be cases, and this is one, in which a determination that there is a "reasonable doubt," see Heyward v. Public Housing Ad'm, 5 Cir., 1956, 238 F.2d 689, about the existence of a genuine controversy does not foreclose a directed verdict if on the evidence as it is actually and finally adduced on a trial reasonable minds could not reach a contrary conclusion. So much so is this open that all that we have said has a binding char-

acter only with respect to the existence of a genuine controversy on the *present* record. We do not say, nor do we intimate by anything said or unsaid, that on a trial the District Court is forbidden to evaluate testimony using expressions such as "grabbing" or "pulling" and conclude on all of the evidence that, as a matter of law, Sgt. Robbins knew of the danger and deliberately chose to risk injury as the Mississippi doctrine envisages. The District Court might finally determine that the plaintiff assumed the risk as a matter of law. The correctness of that decision if and when made will depend not on what we have said about evidence in an entirely different record. It will be determined on the evidence as produced on the trial.

To require a trial which will (or may) end in the very same judgment of dismissal which we here reverse may appear to be an unnecessary and wasteful expenditure of precious limited judicial resource. Of course, it is not. What it is, is a recognition that at times the issues may be such that only after the agony of a full-blown trial may it authoritatively be determined that there was never really the decisive issue of fact at all. The utility of this marvelous instrument of summary judgment is not lessened or its importance weakened because it has limitations. Certainty, or predictable certainty, if not actually unobtainable, is often an illusion in the complex variables which pass through a courthouse door. The rules contemplate that a judge can take a first and a second and a third and a final look.[5] It is the predictable *un*certainty which sometimes makes this necessary. But that is a part of the process by which contro-

verted facts are resolved and, occasionally, facts apparently controverted are established to be uncontradicted in fact.

The cause must therefore be reversed and remanded for a trial.

Reversed and remanded.

CAMERON, Circuit Judge.
I concur in the result.

---

5. In some instances the merits may be reached and the matter fully disposed of by motion to dismiss for failure to state a claim upon which relief can be granted. F.R.Civ.P. 12. But reversal of such a dismissal still leaves open the possibility that factual data can be presented under motion for summary judgment to show that under no provable set of facts is the claim or defense good. See Carss v. Outboard Marine Corp., 5 Cir., 1958, 252 F.2d 690; Millet v. Godchaux Sugars, Inc., 5 Cir., 1957, 241 F.2d 264; Demandre v. Liberty Mutual Ins. Co., 5 Cir., 1959, 264 F.2d 70. A trial may be had and judgment entered on motion for directed verdict, F.R.Civ.P. 50(a). And in case of doubt, to conserve energy and eliminate a retrial in the event of reversal, the motion may be taken with the case and j. n. o. v. entered after verdict, F.R.Civ.P. 50(b).