Barbara R. GROSS, Plaintiff-Appellee,

v.

SOUTHERN RAILWAY COMPANY,
Defendant-Appellant.

Nancy Ruth CANIPELLI, Plaintiff-
Appellee,

v.

SOUTHERN RAILWAY COMPANY,
Defendant-Appellant.

No. 29618.

United States Court of Appeals,
Fifth Circuit.

Aug. 12, 1971.

Rehearing and Rehearing En Banc
Denied Sept. 15, 1971.

John B. Harris, Jr., T. Reese Watkins, Macon, Ga., for appellant; Harris, Russell & Watkins, Macon, Ga., of counsel.

Charles F. Adams, H. T. O'Neal, Jr., Richard B. Thornton, Manley F. Brown, Adams, O'Neal, Thornton, Hemingway & McKenney, Macon, Ga., for appellee.

Before WISDOM, BELL and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

These diversity suits for damages grow out of a grade crossing accident in Monroe County, Georgia, which occurred on a clear September night, at about 8:30, when an automobile ran into the 30th car of a moving Southern Railway Company freight train. Two separate suits were filed, one by Mrs. Barbara R. Gross, mother of the deceased Don C. Gross, Jr., for damages growing out of his death in the accident, and the second by Nancy Ruth Canipelli for personal injuries. At the time of the accident Don Gross was 18 years of age, and Nancy Ruth Canipelli was 20 years old. The complaints were first brought in State Court but removed, thence consolidated for trial before a jury and culminated in verdicts for plaintiffs. Southern Railway's motions for directed verdict at the close of all evidence were denied. Subsequently, motions for judgment notwithstanding the verdict, and alternatively for a new trial, were also denied by the Trial Judge, and the railroad defendant has appealed.

The case is before us the second time. Originally Judge Bootle granted motions for summary judgment in favor of defendant, but we found that there were disputed questions of fact which could only be determined by a trial on the merits, and reversed and remanded for a trial. See 414 F.2d 292 (1969).

The scene of the accident is a rural grade crossing of Southern Railway tracks running approximately north and south which intersect Georgia Highway 74 which runs generally east and west. The asphalt-surfaced highway, 20 feet wide, has a center yellow stripe and white borders, and approaches the railroad tracks from the west in a long, gradual curve. The automobile, owned by Miss Canipelli, was being driven by young Gross in an easterly direction; the Southern Railway freight train consisting of 47 cars, 2 engines and a caboose, was moving toward the north. During the morning the young people had traveled from their home at Macon, Georgia, to Callaway Gardens where they had lunch and played golf. They departed at about 6:30 p. m. to return home and, after being temporarily lost on the road, were driving along Highway 74 at approximately 50–55 m. p. h. on a bright moonlight evening. The car windows were up; the radio was not on. On the west side and parallel with the railroad tracks is a road which terminates when it reaches Highway 74. Two small pick-up trucks with local people had proceeded up this road parallel with

the train. Upon reaching Highway 74 they stopped at a stop sign, then turned to their left and after entering and traveling along the highway, encountered the approaching vehicle being driven by Gross. The lights were dimmed on signals from each of the meeting vehicles. Gross passed the trucks and shortly thereafter crashed into the 30th car of the freight train, demolishing the vehicle. Gross, the driver, was killed and Miss Canipelli, who was in the front seat beside him, sustained serious physical injuries as a result of the collision. The train crew was not aware of the accident until they reached the next station, where they were notified by a State Police trooper and examined the train to find damage to the 30th freight car.

The evidence showed that there are no obstructions on the highway, such as trees or otherwise, for a distance of 780 feet to the grade crossing. The road continued to curve slightly to the left at this point though the headlights of an approaching car would project straight ahead. However, a photograph taken 525 feet west of the railroad shows a rather direct and virtually straight view of the crossing. This photograph also clearly shows that on the right-hand shoulder of the highway there was a 36-inch (diameter) round yellow Georgia Highway railroad sign about 403 feet from the crossing. A red, octagonal Georgia Highway stop sign was situated on the driver's right, approximately 9 feet before reaching the crossing. Both highway signs were luminescent, reflector type, which are visible at night when illuminated by automobile headlights. However, there was no railroad crossbuck sign on the plaintiff's (west) side of the track though there was one on the other (east) side of the track which apparently could not be seen, however, by a vehicle approaching from the west because it was probably obstructed by the passing railroad freight cars. There was evidence of 40 feet of skid marks of the automobile immediately prior to its colliding with the train. There were no

bells, lights or watchmen at the crossing which, as we have said, was in a rural area. The railroad crew testified that both the train's whistle and air bell were being sounded from the blow post, until the engine had completed the crossing; no contradictory evidence was introduced to the fact of the engine bell being rung, but blowing of the whistle was disputed.

The motions of defendant railroad for a directed verdict at the conclusion of all of the evidence were made in each case under Rule 50 of the Federal Rules of Civil Procedure, on the ground that the evidence conclusively showed that defendant railroad was not guilty of any negligence and that the injuries and damages suffered by the plaintiffs were caused by lack of ordinary care and diligence of the driver of the vehicle. Defendant contended that if it was negligent in any regard that the evidence conclusively showed that such negligence was not a proximate cause of the accident. After the verdict, formal written motions for judgment notwithstanding the verdict or, in the alternative, for a new trial were filed in each case, and the defendant railroad company reiterated its contentions that the evidence conclusively showed that the railroad company was not guilty of negligence, that the accident was caused by a lack of ordinary care and diligence by the driver Gross, and that if defendant was negligent in any respect, such negligence was not a proximate cause of the accident. Alternative motions for a new trial specified additional grounds. All of the motions were denied by the Trial Court.

In our former opinion where summary judgment in favor of the railroad defendant was reversed, we said that under the pleadings, affidavits, exhibits and depositions on file, there were issues of fact that should have been submitted to a jury, such as whether this was a "special circumstances" crossing, which was more than ordinarily dangerous and required special warnings; whether the train whistle was blown as required by statute; and whether any of the acts

of negligence charged to the railroad constituted a proximate cause of the accident. Plaintiffs contend that our opinion has disposed of most of the issues herein and is "a mandatory blueprint for all subsequent proceedings." Defendant disputes this contention.

■■ An important threshold question, therefore, is whether our previous decision precluded the District Judge from giving due consideration to defendant railroad's motions for a directed verdict and later for judgment notwithstanding the verdict, on completion of a full trial on the merits. We have answered this question before on at least five occasions—that the Trial Judge is free to consider such motions. It is settled in this Circuit, therefore, that prior denial of summary judgment does not rule out the possibility of a subsequent directed verdict. The earliest applicable decision of this Circuit is Robbins v. Milner Enterprises, Inc., 5 Cir., 1960, 278 F.2d 492, in which we said that "[T]he existence of a genuine controversy [in connection with a motion for summary judgment] does not foreclose a directed verdict if on the evidence as it is actually and finally adduced on a trial reasonable minds could not reach a contrary conclusion." Id. at 496. We said that this holding "is a recognition that at times the issues may be such that only after the agony of a full-blown trial may it authoritatively be determined that there was never really the decisive issue of fact at all." We concluded in *Robbins* that "Certainty, or predictable certainty, if not actually unobtainable, is often an illusion in the complex variables which pass through a courthouse door. The rules contemplate that a judge can take a first and a second and a third and a final look. It is the predictable *uncer*certainty which sometimes makes this necessary." Id. at 497, footnote omitted.

In Braniff v. Jackson Ave.-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523, 529, *Robbins* was cited with approval and we said: "[T]he reversal of summary judgment does not foreclose the right and the imperative duty of the

District Judge to test the case against the actual evidence adduced at every stage of the trial. Nor is it a forecast that on remand the case must go to the jury. That depends upon the actual proof made and such proof may fall way short."

Later, in Stanley v. Guy Scroggins Construction Company, 5 Cir., 1961, 297 F.2d 374, 378, where granting of summary judgment was reversed and the case remanded for trial, we said: "This holding does not rule out the possibility of a directed verdict. It may be, when the evidence is in, that the district judge will find that the case should be disposed of by a directed verdict. He is free to do so. Robbins v. Milner Enterprises, Inc., 5 Cir., 1960, 278 F.2d 492, 496–497. On the other hand, this may prove to be a case where the underlying facts are susceptible of conflicting inferences, and the choice must be left to the jury."

In Gleason v. Title Guarantee Company, 5 Cir., 1963, 317 F.2d 56, 58, in response to a contention by appellant that since the evidence before the District Court on the hearing for summary judgment was substantially the same as the evidence on which the directed verdict was granted, the motion for a directed verdict should accordingly have been denied, we said, "Sound practical reasons * * * may justify a trial judge's denying a motion for summary judgment *even on the identical evidence supporting his granting a directed verdict*." (Emphasis supplied.)

To the same effect see Sheets v. Burman, 5 Cir., 1963, 322 F.2d 277, where the Court quoted with approval the prior holdings in *Stanley* and *Robbins*. See also 5 Moore, Federal Practice (2d ed. 1969) ¶ 50.03 [4], p. 2338, in which Professor Moore states, "[T]he earlier denial of a motion for summary judgment should not, in any way, be considered a barrier to later consideration of a motion for directed verdict." (Footnote omitted.)

Whether the evidence is sufficient to make out a jury case or whether instead a verdict should be directed, is a ques-

tion of law which, therefore, must be decided by the Judge, Lincoln National Life Insurance Company v. Roosth, 5 Cir., 1962, 306 F.2d 110, 112; Glazer v. Glazer, 5 Cir., 1967, 374 F.2d 390, 400. "It is a legal axiom that any fact about which reasonable men can reasonably disagree is a question for the jury * * * but if there is no room for disagreement, a verdict must be directed." Thompson v. Illinois Central Railroad Company, 6 Cir., 1970, 423 F.2d 1257, 1263.[1]

■ In determining whether directed verdicts should have been granted in favor of defendant railroad in these cases, we apply a federal, not a state, test in the comprehensive rule formulated by this Circuit in Boeing Company v. Shipman, 5 Cir., 1969, 411 F.2d 365, 374 (en banc), where we said:

> "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury."

This is the decisive test which we now apply to the facts and circumstances of the case.

■ The critical issue which was finally determinable only after a full trial on the merits is whether there was any negligence by the railroad company which was a proximate cause of the accident. Plaintiffs contend that the failure of the railroad to have the standard cross-buck "X" sign on the west side of the tracks at the point of the accident constituted negligence per se under Georgia law.[2] Defendant responds that the cross-buck sign requirement results from a regulation of the Georgia Public Service Commission requiring the placing of a sign at railroad crossings but that the Commission had no legal authority to impose such a regulation. It is not necessary to our decision that we determine this question. Accepting arguendo plaintiffs' contention that such a cross-buck sign was required, and admittedly there was none on the west side, though there was one on the east side which apparently could not be seen by the automobile driver because it was obstructed by the passing rail cars, the question we must decide is whether, after considering all the evidence presented in the case, the failure of the railroad to have such a sign on the west side was a proximate cause of the accident.

■ Plaintiffs also argue that the evidence shows that since Georgia Code Annotated § 94–506 requires that a train whistle be blown 400 yards before the train reaches a grade crossing, whether the evidence is sufficient to justify a belief one way or the other was a fact question which necessarily had to be submitted to the jury. As with the contention relative to the asserted negligence of the railroad in failing to have a cross-buck sign on the west side of the tracks, whether the whistle question need be submitted to the jury can be resolved here by first deciding whether the failure to blow the whistle could conceivably under the circumstances have been a proximate cause of the accident.

1. The prior opinion in this case could not, of course, foreclose the issues which were the subject of the full-dress trial on the merits, insofar as possible directed verdicts were concerned, nor could that opinion have denied to defendant the right to urge—and have fully considered by the Trial Judge—the question of whether a directed verdict was proper under all the circumstances.

2. See Georgia Code Annotated § 94–511 which provides that it shall be the duty of the Georgia Public Service Commission to designate a standard sign and require its use by railroad companies to designate crossings of public highways across railroads. Violation of such a rule is negligence per se under Georgia law. See Roadway Express v. Jackson, 77 Ga.App. 341, 48 S.E.2d 691 (1948).

Now that all the evidence is in, it is clear that the whistle issue is really not an issue at all because there was ample warning to the driver from highway signs as he approached the crossing and from the presence of the train itself. See Iler v. Seaboard Air Line R. Co., 5 Cir., 1954, 214 F.2d 385, 388. The train crossed the highway, according to the engineer at about 20 m. p. h. and at that point began to travel upgrade. When the 30th car crossed the road the train engine was a quarter mile ahead. The Gross vehicle approached the crossing at 50–55 m. p. h. It was, therefore, a considerable distance west when the train's engine originally crossed the highway and when the whistle was to have blown. Under these circumstances, it is apparent that blowing of the whistle, vel non, had no substantial causal connection with the ensuing accident.

In deciding these issues, therefore, we must also consider that Gross, the driver of the vehicle, had an open, unobstructed view of the crossing on a moonlight night, from at least as far back as 525 feet, with headlights illuminating the highway ahead, that at a point 403 feet from the crossing in plain view was a yellow reflector-type Georgia Highway railroad sign, and 9 feet from the tracks there was another luminescent sign, the red octagonal one, also posted by the Georgia Highway Department. Most importantly, there was the train itself, no reason being shown why it was not clearly visible under the circumstances, which was passing with a noisy clattering, the topmost position of the freight cars being not less than 10 feet above the ground, most of the train having already crossed the highway when Gross ran into it. Absence of a cross-buck sign on the west side of the tracks bore no causal relationship to the accident, which in our opinion was solely the result of the negligence of the driver of the vehicle, who for reasons which are inexplicable failed to see the moving train in time to avoid running into it.[3]

The only direct eyewitness was Miss Canipelli but her testimony is not too helpful in explaining how or why the accident occurred. Apparently since she was not driving she was not paying very close attention to the road ahead. Two of the men who had turned into the highway and passed the Gross vehicle immediately before the accident turned their glance to the rear and saw the vehicle run into the train. But their testimony likewise tells us little about why the accident occurred.

Plaintiffs contend that the two pick-up trucks to which we have referred were interposed between the side of the train and the approaching automobile as they turned into Highway 74. The evidence is to the contrary. In fact, the two trucks entered Highway 74 and proceeded west before the Gross vehicle's lights came into view. The first truck was driven by plaintiff witness Poole who testified that when he turned into Highway 74, there were no lights of any approaching cars, and that he had gotten about 500 feet up the road when he first saw the lights of the oncoming Gross vehicle. The second pick-up truck which was proceeding behind the Poole truck was being driven by plaintiff witness Helms, with witness Legge as his passenger. Helms likewise did not see any approaching traffic as he turned into Highway 74, and met the Gross automobile after he had proceeded a tenth of a mile. Legge's testimony was substantially the same. The two trucks, therefore, were not interposed so as to obstruct Gross' view of the train, for the Gross vehicle was not even in view by either truck as it turned into the highway, or until some time later.

Claimants have had a singular lack of success in suits against railroad companies growing out of grade crossing accidents when they drive their vehicles

---

3. An agreed stipulation of the parties in the pretrial order reads:

"(10) Any negligence of Don C. Gross, Jr. is imputable to Nancy Ruth Canipelli as owner of the vehicle."

into moving trains which have already entered the intersection of the railroad with a street or highway. In Wood v. Atlantic Coast Line Railroad Company, 5 Cir., 1961, 290 F.2d 220, we affirmed per curiam Judge Bootle's entry of judgments for the railroad company notwithstanding the verdicts in favor of persons in an automobile which crashed at night into the 38th railroad car behind 4 diesel engines of a 101-car freight train moving across a public crossing in Georgia, the train consisting of a total of 105 units. In that case Judge Bootle held, 192 F.Supp. 351, 353 (1960), that if the driver of the car could have seen the train within the range of the statutory headlight requirements, no recovery could be had by either the driver or his guest passenger "because his negligence is the sole proximate cause of the collision." Judge Bootle added, "A moving train blocking a crossing tends to attract attention and is even a grimmer warning than a standing train." Id. at 355.

In Atlanta & St. Andrews Bay Ry. Co. v. Church, 5 Cir., 1954, 212 F.2d 688, 691, we said in a Florida case that "[T]he rule is that in a case presenting no special circumstances, one who drives headlong into a train standing across the highway cannot complain of negligence because no special warning of the presence of the train was given. This is so because the train itself standing starkly there is a warning."

In Atlantic Coast Line Railroad Company v. Sapp, 5 Cir., 1957, 248 F.2d 889, 891, a Georgia case, we reversed and rendered jury verdicts for claimants, and held that directed verdicts in favor of the railroad company should have been granted where an automobile at midnight ran into the 83d car of a 92-car moving freight train at a highway crossing. We said that it is "fundamental that when a railroad is permitted to be constructed, its operator may lawfully cross roads and streets with its trains just as members of the public may cross the tracks with their vehicles. Driskell

v. Powell, 5 Cir., 67 F.2d 484. And it is the common sense rule in Georgia as elsewhere that no warning need be given to a person of prudence of an object plainly visible within the range of the statutory headlight requirements. Atlantic Coast Line Railroad Company v. Kammerer, 5 Cir., 239 F.2d 115, 117."

In Turner v. Atlantic Coast Line Railroad Company, 5 Cir., 1961, 292 F.2d 586, 589, we affirmed the granting of a motion by the railroad for a directed verdict against the claim of a motorist who collided with the 53d car of a moving freight train of 70 cars at a highway crossing at about 6 a. m. of a November morning. We said:

"In reviewing an accident case when the plaintiff has been injured grievously, hard as our sympathies may pull us, our duty to maintain the integrity of substantive law pulls harder. Every case involving alleged negligence or contributory negligence or both is not a case for the jury to decide: not if the substantive law of negligence is to survive."

Cases from other jurisdictions are to the same effect. For example, in Wink v. Western Maryland Ry. Co., 116 Pa. Super. 374, 176 A. 760 (1935), the Pennsylvania Superior Court affirmed a judgment for defendant railroad notwithstanding verdicts for plaintiffs where a motorist at night drove into the 39th and 40th cars of a 96-car freight train which was passing over a road crossing. The Court said, "The appellate courts have frequently ruled that, notwithstanding road and weather conditions, it is the duty of an automobile driver to have his car under such control that he may discover a grade crossing or any other obstacle in his immediate path in time to enable him to stop within the range of his lights, or turn the car to avoid danger." The Court added, "Warning signs and signals are provided by railroad companies to warn of the approach of a train to a crossing and not of the fact that the crossing is already oc-

cupied. The cars themselves on the track are sufficient warning to a driver of a car of that fact." Id. at 761.

In the Minnesota case of Sullivan v. Boone, 205 Minn. 437, 286 N.W. 350 (1939), the Supreme Court of that state affirmed judgment notwithstanding the verdicts in a grade crossing accident where in the early morning at 2:25 a. m. an automobile struck the 19th car from the rear of an 86-car freight train, besides the engine and caboose, that is, the 68th car behind the engine. The Minnesota statute required that the train sound signals until the entire train had passed over the crossing but in this case the engineer did not continue use of bell and whistle after the locomotive had cleared the crossing. The Court said; "[I]f there was negligence, the added factor of proximate causation is wanting. At the moment of impact the engine was about half a mile away to the north. Sounding bell and whistle so far away would have added nothing of warning to that furnished by the cars themselves as they moved across the highway directly in front of the occupants of the truck. In such a case, with the crossing in flat country and unconcealed, the rule still holds that the crossing itself, particularly if marked as this one was, with the moving train thereon, is enough of a warning." Id. at 352.

In New Orleans & N. E. R. Co. v. Burge, 191 Miss. 303, 2 So.2d 825 (1941), the Supreme Court of Mississippi reversed a judgment in favor of plaintiff for damages and directed judgment for defendant railroad where plaintiff drove a truck into the caboose at the rear end of a moving freight train after the crossing had been occupied by some 35 freight cars, a locomotive and tender, in all about one fourth of a mile in length. This accident also happened at night. In that case there was a dispute about whether the engineer had sounded a warning by use of bell and whistle. The Court said:

"The failure to ring the bell or blow the whistle does not of itself impose liability. * * * In this, as in all cases, it is necessary to a cause of action on account of the negligence that the latter shall have been the proximate, or a contributing, cause of injury to another; and in order that it shall be a proximate or contributing cause it must have been a substantial factor in producing the injury. And an actor's negligent conduct is not a substantial factor in bringing about harm to another if it would have been sustained even if the actor had not been guilty of the particular negligence charged. 2 Restatement, Torts, § 432. The foregoing statement is particularly applicable in those cases where the actor's negligence consists in the failure to take certain precautions which are required by law for the protection of another's person or chattels, of which the requirement to ring the bell or blow the whistle at public crossings is an example. In such a case, if the same harm, both in character and extent, would have been sustained even had the actor taken the required precautions, his failure to do so is not even a perceptible factor in bringing it about and cannot be a substantial factor in producing it. 2 Restatement, Torts, p. 1162." Id. at 826.

See also Prosser, Law of Torts (3d ed. 1964), 286–287, to the effect that the "substantial factor" test referred to in the Restatement of Torts "is of considerable assistance, and perhaps no better guide can be found." Prosser also states, in a very pertinent sentence, that "The omission of crossing signals by an approaching train is of no significance when an automobile driver runs into the sixty-eighth car." Id. at 242.[4]

4. This was an approving reference by Prosser to the holding in Sullivan v. Boone, 286 N.W. 350 (1939), cited earlier by us in this opinion.

■ Summarizing, after consideration of all the evidence produced at the trial on the merits, we find that:

The railroad grade crossing was open and unobstructed in a rural area; it was not blind or concealed and nothing prevented it being seen by a motorist such as Gross, approaching from the west.

This was not a "special circumstances" crossing, especially hazardous, which required special warnings.

The moving freight train had been in the crossing for several minutes; it was noisy and in plain view for some time before the accident, and a motorist approaching the crossing should see it within the range of his headlights. The moving train's presence in the crossing was of itself a significant warning to an approaching driver.

Two reflector-type, luminescent Georgia Highway signs posted beside the highway right of way gave additional warning to an approaching motorist, the first, a considerable distance before reaching the crossing, made specific reference to the upcoming railroad crossing; the second, a stop sign, gave additional notice to a driver.

The absence of a railroad cross-buck sign on the western side of the railroad crossing bore no causal relationship, and was not a proximate cause of the accident.

The evidence is disputed whether the train whistle was blown before the train reached the crossing, though the affirmative evidence preponderates in favor of a conclusion that the whistle was blown; whether it was or not, the omission to blow the train whistle could not be deemed the cause of or related to the accident.

The evidence is undisputed that the train's air bell was sounded before reaching the crossing and continued to be sounded until the engine completed the crossing.

In our opinion the sole proximate cause of the accident unfortunately was the negligence of the driver Gross, who had ample time if he had been paying proper attention to the road ahead, and if he had his automobile under proper control so as to be able to stop within the range of his vision as illuminated by his headlights, to have observed the highway warning signs and the moving train in the crossing, and to have stopped his vehicle rather than run it into the 30th car of the train.

Reasonable men should be convinced under the state of this record and the evidence adduced, that the railroad company was guilty of no actionable negligence and that the accident was solely the fault of the driver of the automobile. This being true, verdicts should have been directed in favor of the railroad company at the close of all the evidence, or certainly on the filing of motions for judgment notwithstanding the verdict.

Reversed and rendered.

## ON PETITION FOR REHEARING AND PETITION FOR RE-HEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.