**HIGHWAY CONST. CO. OF OHIO, Inc., v. CITY OF MIAMI, FLA.**

No. 9938.

Circuit Court of Appeals, Fifth Circuit.

Feb. 25, 1942.

Rehearing Denied April 6, 1942.

Scott M. Loftin, James E. Calkins, Robert H. Anderson, and Paul R. Scott, all of Miami, Fla., for appellant.

Mitchell D. Price, Sidney S. Hoehl, and J. W. Watson, Jr., all of Miami, Fla., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

McCORD, Circuit Judge.

The highway Construction Company of Ohio, Inc., brought suit against the City of Miami, Florida, to recover amounts alleged to be due for work performed and materials furnished in and about the construction and improvement of certain streets and sewers of the City. The case was tried to a jury. After a three-months trial, the jury returned a verdict in favor of the defendant on all claims with the exception of one for $23,263.15 which the City admitted it owed. Judgment was entered in accordance with the verdict, and the Construction Company appealed.

After due advertisement and competitive bidding, the Construction Company on April 30, 1926, entered into seven contracts with the City of Miami for the paving and improvement of approximately twenty-five miles of streets. The seven contracts, including plans and specifications, are identical in every respect, except as to description of the streets to be improved, the quantity of work to be performed, and the amount of the contractor's performance bond. Work under the contracts progressed through 1926, and was finally and fully completed in December of that year.

In April, 1927, the Construction Company was advanced the sum of $100,000 in addition to amounts which had been previously paid on monthly estimates. In June, 1927, the engineer made and submitted his final report in which he found that the contractor was entitled to receive $123,-263.15 as a final payment for work, materials, and extras. The engineer's report was accepted and approved, and on June 8, 1927, the Commission of the City of Miami authorized payment of the sum of $123,-263.15, less the April advance payment of $100,000. Under the findings of the engineer and resolution of the City Commission, the contractor was entitled to receive $23,263.15 as a final payment under

the several contracts. The Construction Company refused to accept this amount as full payment of all claims, and on August 24, 1929, filed suit in equity against the City. The cause was thereafter transferred to the law side of the docket.

The declaration as first filed claimed damages in the sum of $700,000 and was in seventy-one counts. The Construction Company changed counsel several times, and on January 5, 1931, it filed an amended declaration. Upon stipulation of the parties the cause was referred to an auditor in 1932. The auditor filed his report in 1934, and both parties filed exceptions. The case had become complicated by a prolixity of pleadings, and on October 5, 1937, the parties by stipulation agreed to suppress the report of the auditor, and abandon all pleadings, motions, and mutual stipulations offered since the filing of the amended declaration. It was further agreed that the City would plead over to the amended declaration. The trial court approved the stipulation on October 7, 1937, and vacated its orders mentioned therein. The amended declaration was then tested by demurrer, and was held to be good.

The amended declaration as finally presented was in many respects different from the declaration as first offered, in that the amounts of claims were changed, and the theories of many of the claims were different. The amended declaration was in seventy-one counts; the first sixty-seven being special counts, and the last four being the common counts. The declaration as amended sought recovery for "Additional Depth of Inlets and Rock Foundation", "Reconstructing Old Manholes", "Additional Grading", "Additional Cost of Coarse Aggregate", "Additional Depth of Sewer Pipe", "Additional Cost of Finishing Subgrade", "Additional Cost of Rock Used in Foundation", "Extra Work", amounts due under "Final Estimates", and other claims under the "Common Counts". The Construction Company also added the following allegation to its declaration: "And all conditions were fulfilled and all things happened and all times elapsed necessary to entitle the plaintiff to receive the payment of the said several sums of money hereinabove set forth and to maintain this action; yet the defendant has not paid the said several sums or any part thereof."

To this long list of counts the City of Miami filed pleas denying the facts alleged, and set up numerous general and special pleas. The case then proceeded to trial.

Important here is Section 54 of the Charter of the City of Miami: "When it becomes necessary in the opinion of the City Manager to make alterations or modifications in a contract for any public work or improvement such alterations or modifications shall be made only when authorized by the Commission upon the written recommendation of the City Manager. No such alteration shall be valid unless the price to be paid for the work or material, or both, under the altered or modified contract shall have been agreed upon in writing and signed by the contractor and the City Manager prior to such authorization by the commission."

Of further importance are excerpts from the contracts entered into by the Construction Company and the City:

"4. * * * it is understood that the contractor has, by personal examination and inquiry if necessary, satisfied himself as to the local conditions and as to the meaning, requirements and reservations of the specifications and plans; for after the letting, no deviation will be allowed from the Engineer's interpretation of the plans, specifications and contract. In case errors or omissions are discovered, they are to be corrected or supplied by the Contractor, without extra cost to the City, according to the apparent intention of the designing engineer. * * *

"5. * * * work and dimensions must be in strict accord with them, [referring to the engineer's interpretation of the plans, specifications, and contract] except only when the Director of Public Service may in writing authorize an exception. * * *

"6. * * * All work done or materials furnished are to be subject to the acceptance or rejection of the Engineer, who shall in all cases determine the amount, quality, fitness and acceptability of the work and materials to be paid for and decide finally and conclusively all questions or differences of opinion that may arise as to the interpretation of the plans and specifications, or the fulfillment of the terms of this contract; and in the event of such question or difference, his decision is to be a condition precedent to the contractor's right to receive any money from this contract. * * *

"7. * * * The right is expressly reserved for the Engineer to increase or decrease these quantities to such extent as he may find necessary for the proper completion of the work, or from the limits of the appropriation; if such alterations increase the quantities, the added work or materials will be paid for along with the original, at the rates stipulated in the contract, and subject to all the terms and conditions herein. * * *

"9. Extra Work. Quantities of work or materials in excess of those named in the instructions to bidders and of the same kind, are not to be considered as extra work, and such excess when ordered by the Engineer, will be paid for at contract rates, as hereinbefore specified. Aside from work thus included in the schedule no claims whatever for extra work will be considered or paid, except only when ordered in writing, by the Engineer at a price stated in the order, this price being generally fifteen (15) per cent more than actual cost as a full allowance for tools, appliances and superintendence and as determined by the Engineer, and when the claim is made in writing before the next monthly estimate and accompanied by the order authorizing its performance. All extra work required for the proper completion of the work is to be executed promptly upon the receipt of such order. The Engineer will have the right to appoint a time-keeper to represent the City, to designate what force shall be employed, and the foreman must be approved by him. The Engineer's authority to order extra work is expressly limited to $500.00 on this contract, unless specifically authorized by the Commission of the City of Miami to exceed this amount.

"13. Payments. Payments for the work will be made as follows: If the work progresses according to contract, the Contractor will be paid monthly ninety per cent of the value of the completed work and materials furnished by the Contractor under these specifications, when such materials have been delivered inspected, and payment satisfactorily vouched for to the Engineer, provided the materials in the judgment of the Engineer are such as will be probably incorporated in the work within thirty days. For this purpose the Engineer will after the 25th of each calendar month, make an approximate estimate of said value up to date, deduct 10 per cent and all previous payments and charges, and the balance will be paid, by Commission of the City of Miami to the Contractor on or before the 10th of the following month. This ten per cent is reserved as a part guaranty of the faithful execution of the contract. * * *"

If we but follow the clear and unambiguous terms of the seven contracts, and strip away the long and tedious pleadings, the issues become patent and are in no wise confusing.

■ Before the contracts were let each and every bidder was informed that if there was any "doubt or obscurity as to the meaning of specifications, or if errors or omissions are discovered in the plans, the same shall be brought to the attention of the Director of Public Service in order that the necessary explanation or correction may be made before submitting the bid." The contracts which were subsequently entered into by the contractor and the City expressly provided in Paragraph 4 that the contractor had "satisfied himself" as to local conditions, and as to the meaning, requirements, and reservations of the specifications and plans. It was further understood and agreed that "after the letting, no deviation will be allowed from the Engineer's interpretation of the plans, specifications and contract." The provisions of the Charter of the City of Miami, the instructions to bidders, and the express terms of the several contracts make it exceedingly clear that the parties intended, agreed, and understood that their contracts were to be fully written. The contracts as written were not subject to change, contradiction, or variation by parol evidence. Therefore, the voluminous evidence as to what transpired between the parties before the contracts were signed was immaterial. Knabb v. Reconstruction Finance Corporation, 144 Fla. 110, 197 So. 707; Masser v. London Operating Co., 106 Fla. 474, 145 So. 72, 79, 85; Northern Assurance Co. v. Grand View Bldg. Ass'n, 183 U.S. 308, 318, 22 S.Ct. 133, 46 L.Ed. 213.

■ The court declined to construe and pass upon the different sections of the contracts, except in one or two instances, and permitted explanatory evidence to go to the jury which was wholly irrelevant and should have been excluded. The court should have decided what portions of the contract, if any, were doubtful, and should have ruled out all oral conversations, promises, or corrections, except what was truly an explanation of a doubtful expression in

the writings. His letting it all in, however, was error in favor of the Construction Company, and appellant may not now be heard to complain.

■ The Construction Company seeks to escape the terms of the written contracts by alleging that its claims are for additional work; that the work was done and the materials furnished and was accepted by the City; and that the City waived the conditions of the contracts. Paragraph 5 of the contracts provides that materials, work, and dimensions must be in strict accord with the plans and specifications "except only when the Director of Public Service may in writing authorize an exception." Paragraph 7 also provides that notice of changes of plans and specifications or "the width, the grades or the cross section of the roadway" must be given "in writing" to the contractor. The alleged changes were not authorized in writing as provided by the contracts, and it is not shown that the City Manager or the Commission ever knew that the alleged additional work was done and materials furnished. Under the facts shown there was no waiver of the requirements of the contracts.

■ As to the alleged "extra work" the evidence is without dispute that no order for extra work was made by the engineer in writing, and that the claims were in excess of $500, the express limit of the engineer's authority under each contract. The provisions of Paragraph 9 were completely ignored, and the contractor is not entitled to recover on these claims.

It is further without dispute that as the work progressed under the seven contracts the engineer made monthly estimates of work done and materials furnished, and the Construction Company was paid ninety per cent of his estimates. For more than six months the Construction Company each month received this ninety per cent payment for work done, materials furnished, and extra work. Its officers in charge of the projects made no complaint, submitted no claim, and disputed no estimate until more than three months after the work had been completed, and after the final report had been published by the engineer. It then came forward and made large additional claims. Under the theory now presented, the contractor held back each month claims in excess of $50,000 and accepted ninety per cent of the money on estimates of the engineer for work, materials, and extras, and this in the very teeth of the contracts which provide that claims be made known on or before the 25th of each month—the engineer's estimate day. This conduct of the Construction Company does not add up to open and fair dealings.

■ The contracts provide that the engineer was to have entire supervision of the execution of the contracts; that he was to determine the amount, quality, fitness, and acceptability of the work; that he was to decide "finally and conclusively" all questions or differences of opinion as to the interpretation of the plans and specifications, or the fulfillment of the terms of the contract; that his decision was to be a condition precedent to the contractor's right to receive money on the contracts; and that he was to make the final estimates for payment of the amounts due. Decision of the engineer was to be binding upon the parties, and where, as here, the contractor violated the terms of the contract, and made no attempt to show that the engineer, the City, or its agent were guilty of bad faith, fraud, or deceit, it may not recover. Duval County v. Charleston Engineering & Contracting Co., 101 Fla. 341, 134 So. 509, 515; United States v. Gleason, 175 U.S. 588, 20 S.Ct. 228, 44 L.Ed. 284; Sweeney v. United States, 109 U.S. 618, 3 S.Ct. 344, 27 L.Ed. 1053; Martinsburg & Potomac R. R. Co. v. March, 114 U.S. 549, 5 S.Ct. 1035, 29 L.Ed. 255.

■ On the facts now shown we are of opinion that under the unambiguous terms of the contracts the City was entitled to judgment as a matter of law on the disputed claims, but however this may be the jury heard the evidence on all the claims and found the issues in favor of the defendant.

■ After the case had been submitted, the jury returned to the courtroom and announced that it was "tied up". The judge thereupon asked the jury, "Without telling me whether for or against either party, can you give me some idea about the proportion, as to number on one side?" The foreman gave the numerical division on some of the numerous claims, and the jury, after receiving further instructions retired to consider a verdict, and the lawyers and the court discussed the feasibility of accepting a majority verdict under Rule 48, Rules of Civil Procedure, 28 U.S.C.A. following

section 723c. The appellant, relying upon Brasfield v. United States, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345, and St. Louis & S. F. R. Co. v. Bishard, 8 Cir., 147 F. 496, contends that the court committed reversible error by asking the jury how it stood. The questioning of the jury took place in open court in the presence of counsel for both sides, and appellant made no objection of any kind, and failing in this may not now put the trial court in error. See Rule 46, Rules of Civil Procedure for District Courts.

■ After acceptance of the engineer's final report, the City did not make an unconditional tender of the sum of $23,263.15 which it admittedly owed to the contractor. It offered to pay this amount provided the Construction Company would sign an instrument releasing any and all claims it might have against the City, but the contractor refused to accept the payment under these conditions. The City of Miami is a municipal corporation and is not exempt from paying interest on its obligations, and no unconditional, continuing tender being shown, and no payment having been made into court, the contractor was entitled to interest from August 8, 1927, sixty days after the engineer's final estimate was approved and when the amount became finally due and payable under the contract. The judgment on the liquidated claim will be modified so as to include interest from that date. Milton v. Blackshear, 8 Fla. 161, 168; Ross & Co. v. Walker, 44 Fla. 704, 32 So. 934, 937; Greeley v. Whitehead, 35 Fla. 523, 17 So. 643, 28 L.R.A. 286, 48 Am.St.Rep. 258; Board of Public Instruction v. Osburn, 5 Cir., 101 F.2d 919; City of St. Petersburg v. Meyers, 5 Cir., 55 F.2d 810.

■ As a final assignment of error the appellant contends that the court erred in denying its motion for a new trial, which motion set up many alleged grounds of error including allegations of improper remarks of counsel for the City in his argument to the jury. The five thousand page printed record before us contains more than one hundred pages made up of proceedings on the motion for a new trial. The trial court after a full hearing and consideration of the motion denied it, and the ruling, being an exercise of sound discretion, will not be disturbed.

The judgment will be modified as to interest, and as modified is affirmed.

■ Of the seventy-one counts in the petition only those relating to the balance due on the final estimate had merit. On this appeal appellant is successful only on the one item of interest on that balance. A very simple and brief record would have been sufficient to present that item. We think nine-tenths of the large cost of this appeal fairly attributable to matters in which the appellant is unsuccessful, and only one-tenth of the cost of appeal is awarded appellant against appellee.

Modified and affirmed.