**GOODWIN, INC., Plaintiff-Appellant,**

v.

**CITY OF LAFAYETTE,**
**Defendant-Appellee.**

**No. 27199.**

United States Court of Appeals
Fifth Circuit.

Nov. 19, 1969.

Frank M. Gleason, Rossville, Ga., for plaintiff-appellant.

Norman S. Fletcher, LaFayette, Ga., Oscar M. Smith, Rome, Ga., for defendant-appellee; Shaw, Stolz & Fletcher, LaFayette, Ga., Matthews, Maddox, Walton & Smith, Rome, Ga., of counsel.

Before RIVES, COLEMAN and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

Goodwin, Inc., as plaintiff brought an action against the City of LaFayette, Georgia, defendant, for labor and materials allegedly due under a written contract between the parties for the construction of certain sewerage facilities and improvements to the existing sewerage system. Goodwin's complaint, as amended, alleged eleven distinct claims against the City in the total amount of $269,825.00. All of the claims sought compensation for extra work allegedly done over and above that called for by the contract with the exception of the claims made in Paragraph 6 of the complaint which alleges claims that the City of LaFayette did not permit Goodwin to do certain work, thereby causing it to lose certain monies. The defendant municipality denied all the material allegations and asserted certain special defenses. The City moved for summary judgment as to all claims. The District Court granted the motion except with respect to the claims alleged in Paragraph 6 of the complaint. The claim relative to Paragraph 6 of the complaint is not at issue on this appeal.

At some time prior to October 21, 1963, the date of the execution of the contract, the City of LaFayette, acting through its authorities, decided to have certain sewerage system improvements made. In order to finance the improvements and additions, the City sold revenue certificates and made arrangements with the Housing and Home Finance Agency, an agency of the Federal Government, for a grant to supply additional funds for the contract cost. On October 21, 1963, Goodwin's bid was accepted and a written contract was executed between the municipality and Goodwin for the work to be performed.

The material terms of the contract concerned in this dispute are as follows:

"17: Changes in Work

No changes in the work covered by the approved contract document shall be made without having prior written approval of the owner. Charges or credits for the work covered by the approved change shall be determined by one or more, or a combination of the following methods * * *

"18: Extras

Without invalidating the contract, the owner may order extra work or make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly, and * * * All of the work of the kind bid upon shall be paid for at the price stipulated in the proposal, and no claims for any extra work or material shall be allowed unless the work is ordered in writing by the owner or its architect-engineer, acting officially for the owner, and the price as stated in such order.

"22: Claims for extra cost

No claim for extra work or cost shall be allowed unless the same was done in pursuance of a written order of the architect/engineer approved by the owner, as aforesaid and the *claim presented with the first estimate after the changed or extra work is done.* [Emphasis supplied.]

"24: Construction Schedule and Periodic Estimates

* * * the contractor shall also furnish on forms to be supplied by the owner (a) a detailed estimate giving a

complete breakdown of the contract price and (b) periodic itemized estimates of work done for the purpose of making partial payments thereon."

The work began on or about November 1, 1963, and as the work progressed, Goodwin submitted eleven periodic estimates of the work performed in order to obtain partial payments from the municipality. These estimates were approved by J. B. McCrary Company, Inc., the engineering firm for LaFayette; they were also approved by the city officials, and paid to Goodwin. Each of the eleven estimates contained a certification by Goodwin "* * * that the foregoing is a true and correct statement of the contract account up to and including the last day of the period covered by this periodic estimate * * *".

Approximately one year after the work began, on November 6, 1964, Goodwin submitted a final (twelfth) estimate signed by its president showing that the total adjusted contract amount to that date was $413,325.00; that the work under the contract had been 100 percent completed, and that the City of LaFayette had paid Goodwin, the contractor, all sums due with the exception of $50,534.64.

Also, on the date of November 9, 1964, a contract change order on a form supplied by the Housing and Home Finance Agency, showing a reduction in the original contract price by a sum of $59,752.-00 and stating that the "total adjusted contract price to date is $413,325.00", was accepted in writing by Goodwin and submitted to the Housing and Home Finance Agency. This amount in the sum of $413,325.00 is the same amount as that shown on the final estimate, No. 12, which Goodwin submitted to the defendant municipality.

Thereafter, the City paid Goodwin the $50,534.64 (a total of $413,325.00 on the contract) with the exception of $2,500.00 which the City retained pursuant to an agreement between the City and Goodwin. Subsequently, Goodwin agreed in writing for the City to repair certain manholes with the understanding that the City could deduct $1300.00 from the $2500.00, leaving an unpaid balance of $1200.00. This amount ($1200.00) has been retained by the City since that time for alleged failure of contractor to complete certain cleanup work around the job.

After the final estimate and contract change order, approved by the Housing and Home Finance Agency in the amount of $413,325.00, had been paid by the City of LaFayette, approved by said federal agency, and accepted by Goodwin in November, 1964. Goodwin brought this action against the municipality on February 24, 1967, alleging it is due certain sums for the value of the work performed under the contract. Goodwin contends that the final payment due under the contract was to be made on the basis of unit prices shown in the proposal which was part of the contract, as applied as final contract quantities determined from actual measurement, plus the price agreed upon by the City and contractor, in writing, for "extra work", plus such other lawful charges to which were to be added "other authorized additions and deductions", from which the final sum due the contractor was to be determined.

This action was brought more than two years and three months after completion of the work without the contractor Goodwin ever having presented any claim previously to the City of LaFayette.

The issue in this case is whether or not the District Court properly granted the partial summary judgment to the defendant on ten of the eleven claims set out in plaintiff's complaint. We hold that the District Court properly construed the contract as to the ten claims in question and affirm.

Under the Georgia law, the Courts of Georgia, as well as this Circuit Court, have held that the construction and legal effect of a written contract is for determination by the Court. See O'Brien v. Elder, 250 F.2d 275 (5 Cir., 1957); Hohenstein v. S.M.H. Trad-

ing Corp., 382 F.2d 530, 532 (5 Cir., 1967); Holt v. Clairmont Development Co., 222 Ga. 598, 151 S.E.2d 151.

The evidence conclusively shows that Goodwin (1) entered into the contract with the City for certain improvements; (2) that it presented eleven periodic estimates as the work progressed as required by the contract without including any of the claims now made in any of the estimates; (3) that it made a final estimate after all the work was completed for purposes of getting paid, showing that the total work done under the contract amounted to $413,325, without including any of the claims now made in any of the estimates; (4) that it signed a contract change-order representing to the City and an agency of the Federal Government that the total work done under the contract was $413,325 and amending the contract accordingly; (5) that its president wrote a letter to the City seven months later in effect admitting that only $1200 of the amount due it was unpaid; (6) that it accepted payment of public funds, both City and Federal, based on its own estimates; and (7) that it never at any time even mentioned to the City any of the claims made in this action prior to filing suit on February 24, 1967.

■ More than two years after submitting the final estimate Goodwin filed this suit claiming additional amounts "for work done under the contract" although admitting that none of the amounts claimed were ever included in any of the eleven periodic estimates or in the final estimate and that no mention had ever been made to the City of any such claim.

Paragraph 22 of the contract, supra, provided that no claim for *extra work* or *extra cost* would be allowed unless the claim was presented with the first estimate after the changed or extra work was done. There is no ambiguity in this provision of the contract and the District Court properly granted summary judgment, as none of the claims were presented with the first estimate after the alleged changed or extra work was done, or with any estimate later submitted. There is no merit in the contention of Goodwin that it should escape the terms of the written contract by alleging its claims are for "additional" work.

The case of Highway Construction Company of Ohio v. City of Miami, Fla., 126 F.2d 777 (5 Cir. 1942), is similar to the case at hand. In *Miami*, as in this case, the contractor sought payments for alleged extra or additional work. One of the decisive reasons for denying recovery in *Miami* was the holding of this Court that the contractor could not recover for the reason that the contractor received and accepted monthly estimates and accepted payments under these estimates without making any complaint or submit any claim as to the estimates until "more than three months after the work had been completed." Speaking for the Court, the late Judge McCord held:

"* * * as the work progressed under the seven contracts the engineer made monthly estimates of work done * * * and the Construction Company was paid ninety per cent of his estimates. For more than six months the Construction Company each month received this ninety per cent payment * * *. Its officers in charge of the projects made no complaint, submitted no claim, and disputed no estimate until more than three months after the work had been completed, and after the final report had been published by the engineer. It then came forward and made large additional claims. Under the theory now presented, the contractor held back each month claims in excess of $50,000 and accepted ninety per cent of the money on estimates of the engineer for work, materials, and extras, and this in the very teeth of the contracts which provide that claims be made known on or before the 25th of each month—the engineer's estimate day. This conduct of the Construction Company does not add up to open and fair dealings."

While in *Miami*, supra, the claim was submitted three months after the last estimate, here Goodwin's claim was submitted two years and three months later. In *Miami*, the contractor refused to accept the last estimate as full payment. Here Goodwin not only presented the final estimate, but accepted payment and delayed making any claim for more than twenty-seven months. We reiterate the words of Judge McCord in *Miami*, supra: "This conduct of the Construction Company does not add up to open and fair dealings".

Goodwin having failed to properly present its alleged claims for extra work or cost as provided by the contract between it and the City of LaFayette, the District Court properly granted summary judgment as to the ten claims. As Goodwin is not entitled to recover on these claims because of its failure to comply with Paragraph 22 of the contract, it is unnecessary for this Court to consider the other defenses of the defendant municipality to these claims.

The judgment is
Affirmed.