E. C. ERNST, INC., Plaintiff-Appellant,

v.

GENERAL MOTORS CORP., and the Whiting-Turner Contracting Company, Defendants-Appellees.

No. 75–1147.

United States Court of Appeals, Fifth Circuit.

Aug. 16, 1976.

Aubrey L. Coleman, Jr., Glower W. Jones, Atlanta, Ga., for plaintiff-appellant.

Joseph B. Haynes, R. Byron Attridge, Atlanta, Ga., Ross L. Malone, Detroit, Mich., for General Motors.

Sutherland, Asbill & Brennan, James P. Groton, Charles T. Lester, Jr., Atlanta, Ga., for Whiting-Turner Cont. Co.

Before THORNBERRY * and AINSWORTH, Circuit Judges, and HOFFMAN **, District Judge.

AINSWORTH, Circuit Judge:

This is the second appeal in a Georgia diversity action brought on a construction contract by appellant, E. C. Ernst, Inc., against General Motors and its general contractor for the project, Whiting-Turner. As the electrical subcontractor, Ernst sought $134,451 in damages allegedly resulting from construction delays which disrupted the performance of its contractual obligations.

In our first decision, we vacated the summary judgment entered in favor of General Motors and Whiting-Turner and remanded the case to the District Court. *E. C. Ernst, Inc. v. General Motors Corp.*, 5 Cir., 1973, 482 F.2d 1047. Upon remand, Ernst contended that our treatment of the contractual defenses raised by General Motors and Whiting-Turner in their motion for summary judgment foreclosed any further consideration of these issues. The trial judge, however, ruled that our decision required a full trial of all the issues raised by the pleadings. After a two-week trial, the District Judge directed a verdict in favor of Whiting-Turner and sent the issue of General Motors' liability to the jury. The jury subsequently returned a general verdict in favor of General Motors exonerating it from liability.

In this appeal, Ernst challenges the trial judge's interpretation of our first decision and, in the alternative, argues that he erred

* Judge Thornberry was a member of the panel that heard oral arguments but due to illness did not participate in this decision. The case is being decided by a quorum. 28 U.S.C. § 46(d).

** District Judge of the Eastern District of Virginia, sitting by designation.

in not directing a verdict in Ernst's favor on several issues. Ernst contends further that the District Court erred in directing a verdict for Whiting-Turner. We conclude, though, that our previous decision did not preclude litigation of these issues and that the proceedings below were free of reversible error. We therefore affirm.

## I.

Involved in this case is a facility designed to complete automobiles produced in an adjacent building at General Motors' Chevrolet assembly plant in Atlanta, Georgia. Whiting-Turner became general contractor for the project pursuant to an agreement entered into with General Motors on April 6, 1967. Subsequently, on April 18, General Motors also executed a contract with Ernst which provided that Ernst would perform the electrical work for the project. On June 5, General Motors assigned the Ernst contract to Whiting-Turner so that the electrical work could be supervised by Whiting-Turner in its capacity as general contractor.

Under the controlling contracts, work was to begin immediately. The facility was scheduled to be ready for beneficial occupancy on December 1, 1967, with final completion slated for April 11, 1968. The start of construction, however, was delayed six to seven weeks by difficulties encountered by Black Grading, a contractor engaged by General Motors to prepare the building site.

Immediately after being informed of the impending delay, Ernst wrote to Whiting-Turner on May 1, 1967 disclaiming liability for the late start dates and indicating that a proposal for compensation would be forthcoming. The project was not substantially completed until the first week of June 1968, at which time the plant went into full operation. By September of that year, all adjustments and repairs were completed and all performance under the contract ended.

Shortly thereafter, Ernst requested a meeting with General Motors and Whiting-Turner "to thoroughly discuss and settle all outstanding directives, claims, etc." which had arisen during the course of construction. The meeting was held on October 28 and 29 with the result that General Motors subsequently paid $28,000 in settlement of the numerous claims raised by Ernst. On December 20, 1968, however, Ernst submitted a 180-page "claim booklet" demanding an additional $134,000 for losses allegedly resulting from construction delays. These claims became the subject of the suit below.

## II.

It is Ernst's position that our previous decision vacating the summary judgment entered against it was determinative of the notice and settlement defenses raised by General Motors and Whiting-Turner upon remand. Ernst contends, therefore, that the District Court erred in permitting these issues to be considered at trial.

Much of our previous decision was, indeed, phrased in broad language which, considered out of context, could be construed as being conclusive on the issues of notice and settlement. Prior to any discussion of the facts before us in that appeal, however, we were careful to limit the effect of our decision upon subsequent proceedings. After noting that "[t]he question is whether summary judgment should have been granted," we stated:

> When a movant makes out a convincing showing that genuine issues of fact are lacking, it becomes incumbent on the adversary to adequately establish by receivable facts that a real, not formal, controversy exists. *Stopping short of expressing any opinion as to how the trier [of the fact] should resolve the fact issue ultimately*, we think Appellant [Ernst] has made the required showing and should have been allowed to go to trial.

482 F.2d at 1049 (emphasis supplied). Also, we concluded our opinion by reiterating that:

> Appellant here has demonstrated to our satisfaction that *genuine triable issues of fact are in existence*. Where such a showing is made, summary judgment may not be substituted for trial.

482 F.2d at 1057 (emphasis supplied). Nowhere did we state that we were entering summary judgment in favor of Ernst on the notice and settlement questions.

During the course of our discussion of the notice and settlement questions, we made several seemingly conclusive statements. For example, in response to contentions that Ernst's May 1, 1967 letter was not sufficiently specific to satisfy the contractual notice requirement, we noted that general contract law does not require the giving of unreasonably specific notice:

> Our decision here should in no way be construed as relieving the parties to a contract of strict compliance with notice provisions and the like. To the contrary, it results from our conclusion that, under the particular facts of this case, Appellant complied with the notice provision contained in paragraph 52 of its contract to the extent reasonable. . . . The question we have answered here is—need Appellant, at the time of its May 1 letter, have made their [sic] notice any more specific than it did? Our answer to that is one well supported in general contract law—if it could have, it should have. We think the record supports the conclusion that here it did all it could have done.

*Id.* at 1056.

On the issue of settlement—a question not reached by the District Judge in his order granting summary judgment—we stated:

> Though we would agree that Appellant's letter [requesting the settlement meeting] evidences a poor choice of language, we do not think that their intention there was to settle the claims at bar here. To so hold would not only be to read that particular phrase out of context with the rest of the letter, but, in view of the nature of the other claims settled at the October 29 meeting, such a holding would be illogical. The record supports the conclusion that Appellant requested this meeting to settle various directives from GM to perform extra work incurred during the course of the project, but for which no price had been agreed upon

between the parties. The only thing which remained on these claims of record was for the parties to meet and negotiate the prices.

*Id.* at 1057 (citations omitted).

■ We noted at the outset of our opinion, however, that we were merely reviewing the record under "the usual standard" governing appeals from summary judgments. *Id.* at 1049. That standard, of course, requires us to view the record in the light most favorable to the party who opposed the summary judgment motion; accepting his allegations as true and giving him the benefit of the doubt whenever his assertions conflict with those of the moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Gauck v. Meleski,* 5 Cir., 1965, 346 F.2d 433, 436; 10 C. Wright & A. Miller, Federal Practice and Procedure § 2716 at 430–32 (1973). Under this standard, our analysis of the limited record before us necessarily was of a binding character only with respect to the existence of a genuine triable controversy. As in any reversal of summary judgment, our assessment of the facts was not a mandatory blueprint for all subsequent proceedings upon remand. *Gross v. Southern Ry.,* 5 Cir., 1971, 446 F.2d 1057, 1060. Indeed, we have held that our reversal of a summary judgment does not preclude the trial court from subsequently directing a verdict against the appellant:

> [T]he reversal of summary judgment does not foreclose the right and the imperative duty of the District Judge to test the case against the actual evidence adduced at every stage of the trial. Nor is it a forecast that on remand the case must go to the jury. That depends upon the actual proof made and such proof may fall way short.

*Braniff v. Jackson Ave.-Gretna Ferry, Inc.,* 5 Cir., 1960, 280 F.2d 523, 529; *accord, Gross v. Southern Ry., supra; Sheets v. Burman,* 5 Cir., 1963, 322 F.2d 277, 281; *Stanley v. Guy Scroggins Constr. Co.,* 5 Cir., 1961, 297 F.2d 374, 378; *Robbins v. Milner Enterprises, Inc.,* 5 Cir., 1960, 278 F.2d 492, 496–97.

There is no support, moreover, for Ernst's contention that we intended to direct the District Court to grant summary judgment in Ernst's favor. Ernst does not now assert, and nothing in our previous opinion indicates, that Ernst requested this Court to do anything more than reverse the summary judgment entered against it. Indeed, prior to that first appeal, Ernst had not filed a motion with the District Court for summary judgment against General Motors and Whiting-Turner.

Although it is occasionally proper for an appellate court to enter summary judgment for the non-moving party, this occurs only in the rare case in which it is very clear that all material facts are before the reviewing court. *See, e. g., Morgan Guaranty Trust Co. v. Martin*, 7 Cir., 1972, 466 F.2d 593, 600; *Abrams v. Occidental Petroleum Corp.*, 2 Cir., 1971, 450 F.2d 157, 165–66; *Tabacalera Severiano Jorge, S.A. v. Standard Cigar Co.*, 5 Cir., 1968, 392 F.2d 706, 716. Such a case arises, for example, when both sides have presented all the facts to the District Court as though the summary judgment hearing were a final one or when admissions of counsel at the appellate stage remove any uncertainty as to the facts. 6 J. Moore, Federal Practice ¶ 56.12 at 56–337 (1976). Summary judgment will not be awarded to the non-moving party, however, where, as here, the moving party has not been given a full and fair opportunity to dispute the facts alleged by his adversary. *See id.* at 56–334. As Professor Moore has observed:

> A party moving for summary judgment . . . may make certain concessions in favor of his adversary for the purposes of the motion that do not carry over and support summary judgment for the adversary.

*Id.* at 56–337. Therefore, even if there were serious doubt as to our intention, our first opinion could not fairly be construed as requiring the District Court to enter summary judgment against General Motors and Whiting-Turner on the notice and settlement issues.

### III.

In the alternative, Ernst contends that the District Judge erred in not directing a verdict in its favor on the notice and settlement issues. The standard governing motions for directed verdict is the same on appeal as it is at trial. *Alman Brothers Farms & Feed Mill, Inc. v. Diamond Laboratories, Inc.*, 5 Cir., 1971, 437 F.2d 1295, 1298; *Boeing Co. v. Shipman*, 5 Cir., 1969, 411 F.2d 365, 367 n. 1. Under that standard, we must consider all of the evidence

> in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

*Boeing Co. v. Shipman, supra*, 411 F.2d at 374. Our examination of the record reveals ample evidence to support the District Court's submission of the notice and settlement questions to the jury.

### A.

Paragraph 52(c–1) of the contract required Ernst to give notice "in writing, of [its] contentions, the amount of [its] claim with respect thereto, and all details in connection therewith" within seven days of first observing an act or omission causing damage or loss.[1] Strict compliance with

---

1. In full, Paragraph 52(c–1) reads as follows:

    If the Contractor shall contend that he is entitled to payment from the Owner for increase in the cost of the work, damage or loss, because of any action, or omission of the Owner, or others engaged by the Owner, during the performance of the work, the Contractor shall not delay his work on account thereof and shall, within seven (7) days after the first observance of such occurrence, noti-

this notice requirement was a condition precedent to any recovery by Ernst.[2] It is undisputed that the only notice ever given of Ernst's claim was its May 1, 1967 letter stating:

> We cannot be held liable for late start dates beyond our control, without additional compensation and/or extension of time. Our proposal for compensation for this late start date will be forthcoming when the work presently under construction is completed and an official start date is assigned to the Whiting-Turner Company.

The parties also agree that Ernst made no specific claims until it presented its claim booklet almost twenty months later on December 20, 1968. This was six months after the Chevrolet building was fully operational and three months after all adjustments and minor repairs had been completed.

In our first opinion, we vacated the District Court's award of summary judgment because its construction of the contract's notice provision placed an unreasonable burden on Ernst. While recognizing that Ernst could not have provided a detailed accounting of its losses in its May 1967 letter, the District Judge had held that estimates should have been provided "as the increased costs were actually incurred." We concluded, however, that

> since the initial delay appears to have been a continuing one, thereby causing certain stages of the work to be done under severe weather conditions . . notice given "as the increased costs were actually incurred" would have practically required Appellant [Ernst] to give daily notice. Bearing in mind the generally accepted purpose of the notice provision, which is to alert the other party of a grievance against it, we think the giving of such daily notice is more of a burden than a contract or the law should impose.

*Ernst, supra*, at 1055 (citation omitted). Having determined that Ernst could not reasonably have been required to present a specific claim each time it incurred increased costs, we concluded that further proceedings were required on the notice issue.

Ernst contends that the District Court should have directed a verdict in its favor on the notice issue because its May 1, 1967 letter gave General Motors and Whiting-Turner early notice of the existence of its claim and because it was impracticable for it to have estimated the amount of its damages until after the project was completed. The notice issue, however, is a mixed question of law and fact, involving as it does a determination of the reasonableness of Ernst's conduct in light of the contractual requirement and the particular circumstances of this case. Thus, the adequacy and timeliness of one party's efforts to give notice of breach "is a question which is particularly within the province of the jury." *Eastern Air Lines v. McDonnell Douglas Corp.*, 5 Cir., 1976, 532 F.2d 957, 973 (applying Uniform Commercial Code notice requirement).

In our view, the evidence adduced at trial is more than sufficient to support the jury's verdict. During the twenty months between Ernst's May 1, 1967 letter and the submission of its claim booklet on December 20, 1968, Ernst provided no further notice, either written or verbal, that a claim would be forthcoming. As we have seen, Ernst's May 1 letter was not an unqualified demand for compensation. It requested "additional compensation and/or extension of time." Indeed, the record reveals that Ernst repeatedly asked for and received extensions which were commensurate with the length of the construction delays. It is undisputed, moreover, that Ernst made no mention of these claims at the October 1968

---

fy the Architect-Engineer and the Purchasing Department, in writing, of his contentions, the amount of his claim with respect thereto, and all details in connection therewith.

**2.** Paragraph 52(d) provides:

It is a condition precedent to the consideration or prosecution of claims by the Contrac-

tor that the foregoing provisions [which include Paragraph 52(c–1)] be strictly observed in each instance, and if the Contractor fails to comply, the Contractor shall be deemed to have waived his claim . . . . .

settlement meeting. Therefore, even assuming that the 1967 letter constituted adequate notice of the existence of its claim, the jury could have concluded that Ernst's subsequent conduct led General Motors and Whiting-Turner to believe that the claim was no longer pending. *See Eastern Air Lines v. McDonnell Douglas Corp., supra*, 532 F.2d at 978–79.

The jury also could have reasonably concluded that Ernst's December 20, 1968 estimate of its damages was untimely. Throughout the construction of the Chevrolet facility, Ernst maintained a computerized recordkeeping system which permitted it periodically to compare its actual expenses to its projected costs. Inasmuch as the plant was substantially complete by June 1968, the jury could have concluded that it was unreasonable for Ernst to have delayed six months before providing General Motors and Whiting-Turner with an estimate of its losses. In conclusion, then, the jury could have reasonably concluded that Ernst was barred from asserting any claim arising from the site preparation delays. *See Goodwin, Inc. v. City of Lafayette*, 5 Cir., 1969, 418 F.2d 698, 701–702 (applying Georgia law); *Highway Construction Co. v. City of Miami*, 5 Cir., 1942, 126 F.2d 777.

## B.

Even if the jury's general verdict could not be upheld on the ground that Ernst gave inadequate notice of its claim, it could nevertheless be sustained on the theory that Ernst settled all its claims against General Motors and Whiting-Turner. Ernst contends, however, that the evidence adduced at trial required a directed verdict in its favor on this issue as well.

The settlement meeting in question was requested by Ernst in the following terms:

We bring to your attention that there are many outstanding directives which have not been covered by change orders . . . .

We suggest that a meeting be set up as soon as possible in order to thoroughly discuss and settle all outstanding directives, claims, etc. . . .

General Motors thereupon wrote Whiting-Turner calling a meeting the purpose of which was "the complete resolution of all outstanding Field Orders and Claims of record by all Contractors associated with the . . . project." Whiting-Turner forwarded a copy of this letter to Ernst and stated that the meeting would be "to settle all Field Orders and Extra-Work Claims." At the ensuing meeting, General Motors agreed to pay Ernst $28,000 in settlement of its claims.

In our first opinion, we indicated that summary judgment could not be entered against Ernst on the settlement issue because the record then before us lent support to the conclusion that the meeting was called only

to settle various directives from GM to perform extra work . . . for which no price had been agreed upon between the parties. The only thing which remained on these claims of record was for the parties to meet and negotiate the prices.

*Ernst, supra*, 482 F.2d at 1057.

The evidence produced at trial, however, shows that the meeting was not restricted to claims for which General Motors had already admitted liability. Witnesses testified that it was the custom and practice in the construction industry to have a meeting at the end of a job to settle all outstanding claims. Consistent with this practice, the October 1968 meeting between Ernst, General Motors and Whiting-Turner was not limited to any particular type of claim. For example, some of the claims raised by Ernst involved issues of liability as well as price. At least one matter, moreover, concerned a claim for damages which were not caused by a General Motors "directive" for extra work.

It is undisputed, moreover, that Ernst's representatives at the settlement meeting never raised the issue of losses resulting from the construction delays. Indeed, Ernst's negotiator testified that he told General Motors and Whiting-Turner that no other claims were pending even though he

knew that Ernst would later present the claim at issue here.[3]

From this evidence, a jury could reasonably conclude that the October 1968 meeting was intended to settle all claims which Ernst had against General Motors and Whiting-Turner. *See American Associated Companies, Inc. v. Vaughan*, 1957, 213 Ga. 119, 97 S.E.2d 144, 146. The resulting accord and satisfaction effectively barred Ernst's right to recover for any damages it suffered as a result of the construction delays.[4]

We conclude, therefore, that there is ample evidence to support the jury's general verdict either on the ground that Ernst failed to give adequate and timely notice of its claim, or, alternatively, because it settled all its claims against General Motors and Whiting-Turner. Accordingly, the District Judge did not err in denying Ernst's motions for a directed verdict.

### IV.

■ Finally, Ernst challenges the District Court's granting of a directed verdict in favor of Whiting-Turner. The trial judge refused to submit the issue of Whiting-Turner's liability to the jury because he could find no evidence that the "late start dates" complained of in Ernst's May 1, 1967 letter were caused by any act of Whiting-Turner.

3. Mr. McCorkle, one of Ernst's negotiators, testified that at one point in the discussions, Mr. Johnson, another Ernst official, called him out of the meeting and "mentioned the fact that there would be an additional claim." McCorkle's testimony indicates that he knew the claim would be for damages resulting from the construction delays and he intimated that he had been instructed not to bring this issue up during the negotiations. He went on to testify as follows:

Q. After you presented your last claim, were you asked if you had any other claims? A. They asked me, "is that all the claims that you have?" and I said yes.

Yes, but that was all I had. I done emptied my briefcase.

4. Without objection from Ernst, the District Court's jury instructions on this issue provided in part as follows:

As we have seen, Ernst's contract with General Motors required it to give written notice of any claim for losses resulting from "any action . . . or omission of the Owner [General Motors] . . . or others engaged by the Owner." Inasmuch as General Motors did not assign this contract to Whiting-Turner until June 5, 1967, it is not clear that the above-quoted provision was applicable to Whiting-Turner on May 1, 1967. Even if it were, Ernst's letter concerned only the construction delays experienced by Black Grading, a contractor separately employed by General Motors. Whiting-Turner did not engage Black Grading and no act or omission on its part caused the site preparation delays. In fact, Ernst's principal witness testified that he did not think that "Whiting-Turner was responsible for the action of Black Grading on this separate contract. . . ." It is clear, then, that Whiting-Turner could not be held liable for the claims raised by Ernst in its May 1, 1967 letter.

Although Ernst contends that Whiting-Turner, as general contractor for the project, subsequently caused delays and "inefficiencies," no notice—either written or oral—was ever given by Ernst of these allegations. We therefore find no basis for reversing the directed verdict in Whiting-Turner's favor.

The accord and satisfaction, also referred to as a compromise or settlement, need not be in writing to be effective and valid. Such an agreement may be made by the actions, conduct and negotiations of the parties, but a definite assent to—that is, a meeting of the minds as to the terms of the agreement—is essential to a valid compromise, since a settlement cannot be predicated on equivocal actions, if any, of the parties.

In your determination of whether the parties intended to settle all claims of Ernst at the October 29, 1968 meeting, the intention of the parties is to be determined by the intention which was expressed by the parties, or incident to the meeting, and not the secret intention of either party.

We have carefully considered the other contentions raised by Ernst in this appeal and find them to be without merit. The judgment of the District Court is therefore

AFFIRMED.