**FORREST R. B. ENTERPRISES, INC., Plaintiff,**

v.

**CAPRICORN RECORDS, INC., Defendant.**

No. 76 Civ. 4234 (KTD).

United States District Court, S. D. New York.

Feb. 2, 1977.

Arrow, Silverman & Parcher, P. C., New York City, for plaintiff by Peter A. Herbert, New York City.

Mayer, Nussbaum & Katz, P. C., New York City, for defendant by Theodore Nussbaum, New York City.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, the corporate employer of Forrest Richard Betts (Betts), a singer and guitarist formerly associated with the "rock group" known as the Allman Brothers Band (the "Band"), has moved for summary judgment and dismissal of the counterclaims in this action for a declaratory judgment freeing Betts as a solo recording artist from any contractual obligation to defendant Capricorn Records, Inc. (Capricorn), for whom, it is undisputed, the Band was exclusively obligated to record. The counterclaims sought to be dismissed allege, as against plaintiff and one Steven Massarsky, Betts' business manager, tortious interference with the contract in question, and, as against plaintiff, Betts and Massarsky, tortious interference with the execution of, and refusal by Betts to so execute, a new management agreement with Phil Walden and Associates, who purportedly had been acting as Betts' personal manager since July, 1969.

It is uncontroverted that in November, 1972, the Band and its members entered into a recording contract with defendant, and that in June, 1976 the Band ceased to function as a group. Thereafter, Betts notified defendant that since he was no longer a member of the Band, he desired to per-

form as a solo recording artist for another company of his choice. The instant suit followed.

The sole question presented by this motion is whether, under the terms of the recording agreement, Betts is obligated individually to perform exclusive recording services for defendant as a solo artist, despite the Band's dissolution as a recording group. The pertinent contractual provisions provide:

AGREEMENT made this 1st day of November 1972 by and between CAPRICORN RECORDS, INC. and/or its associates, subsidiaries, nominees, successors and assigns (hereinafter called "Company") and GREGORY LENOIR ALLMAN, CLAUDE HUDSON TRUCKS, JR., RAYOND BERRY OAKLEY III, JOHNNY LEE JOHNSON, FORREST RICHARD BETTS, professionally known as the ALLMAN BROTHERS BAND, (hereinafter referred to as "Artist").

/ jointly and severally *

1. The Artist hereby grants and Company engages the Artist's exclusive personal services in connection with the production of phonographic records. If this agreement, is with more than one individual, this agreement shall be binding upon each individual who is a signatory hereto as an Artist, jointly and severally.

Rider .

\*　\*　\*　\*　\*　\*

3. If any member of the group shall leave the group or ceases to perform as a member of the group, the Artist and the Company may mutually designate a new member who shall be deemed substituted in this agreement in place of such leaving member and shall be automatically bound by all the terms and conditions of this agreement. The artist shall execute such documents as the company may require in connection therewith. Any such leaving member shall continue to be bound individually by the applicable provisions of this agreement, and shall continue to record for the Company under each and all terms and conditions contained in this agreement except that any such leaving artist shall receive A.F. of M. scale as his sole advance or payment for recording hereunder and shall receive a basic royalty of __%.

Additionally, paragraph 14 provides in part:

14. This agreement may not be modified, except in writing signed by both parties. This agreement shall be subject to the laws of the State of Georgia applicable to agreements to be wholly performed therein . . . .

Plaintiff contends that Rider paragraph 3 is the sole governing provision of the instant controversy, and since it is conceded that the space provided for the applicable royalty rate was never filled in nor made the subject of any subsequent written agreement, that the provision is unenforceable for lack of a material term. Defendant disputes the applicability of such clause in the present absence of the Band's existence as a performing entity. Relying instead on the "joint and several" language of paragraph 1, defendant contends that Betts is exclusively obligated as a solo performer, and that this obligation survives the existence of the group. Alternatively, defendant argues that if Rider paragraph 3 is found to control, then a triable issue of fact is presented as to the parties' intention regarding the applicable royalty rate.

 I find it unnecessary to address this alternative contention, since I have re-

---

* This phrase was typewritten into the contract, unlike the second reference to "jointly and severally" which appeared in printed "boilerplate" type, a fact to which defendant attributes great weight in construing the meaning of the phrase. It is unclear to me, however, whether this typewritten phrase (uninitialled by the parties, in contrast to other changes in the "boilerplate" language of the contract as a whole) refers to the preamble, so as to read "(hereinafter referred to jointly and severally as "Artist")," or to paragraph 1, so as to read "The Artist jointly and severally hereby grants . . . ". Both parties appear to have accepted the phrase as properly part of paragraph 1 and it shall be so treated for the purposes of this motion.

solved the threshold question of whether the Rider paragraph 3 controls in the negative. This determination, essentially one of construction of an unambiguous provision, is clearly one for the court. *Goodwin, Inc. v. City of Lafayette*, 418 F.2d 698 (5th Cir. 1969).

Initially, I note that defendant, who essentially seeks to bind Betts under the contract, strenuously contends that this provision does not do so. Strangely, it is rather plaintiff who, in its efforts to free Betts, attempts to show the applicability of this clause in the first instance. With these positions in mind, I turn to an analysis of the language of the clause itself.

Although the provision addresses both a "leaving member" and one who "cease[s] to perform as a member of a group", it further recites that "the artist and the company may mutually designate a new member who shall be deemed substituted in place of such leaving member . . .". In so providing, it indicates a primary concern with protecting the integrity of the Band as a performing entity; that is, by allowing for the replacement of a member, the continued existence of the Band is contemplated. In the absence of an existing group, however, applicability of this clause would mean permitting the creation of an entirely new group, totally unrelated to the original Band. Such a situation could not possibly have been intended as encompassed within the four corners of this agreement.

The ultimate question, then, is whether the "joint and several" language of paragraph 1 merely describes the nature of Betts' liability in case of breach, as urged by plaintiff, or represents a separate recording obligation on the part of Betts as a solo artist despite the Band's non-existence, as posited by defendant. Supporting plaintiff's position is the absence of any other reference in the agreement to individual services rights or responsibilities. However, militating against that construction is the fact that the contract was executed by the members of the Band, both individually and in their group capacity. There is no indication within paragraph 1 or otherwise in the agreement whether the parties intended their joint and several obligations to survive the life of the group. Although it is doubtful that the agreement would have been intended to create six separate recording contracts—with the Band and each member thereof—not only during the life of the group but also thereafter, the intention revealed by the language of paragraph 1 is sufficiently ambiguous to require some further showing. Since neither party has submitted any type of proof on this issue, and since, in any event, resolution of this issue will not obviate the need for a trial on the unrelated counterclaim asserted against plaintiff, Betts and Massarsky, unaddressed by the parties on this motion, summary judgment is denied at this time.

The case will be placed on the ready trial calendar; the parties will have twenty-four hours' advance notice of trial.

IT IS SO ORDERED.